520 A.2d 506

**INSURANCE COMPANY OF NORTH AMERICA**

**v.**

**Ronald R. RALL and Margaret A. Rall, His Wife, and Farmers Fire Insurance Company**

**v.**

**BARNET, INC., for Itself and doing business as Gateway Underwriters, and George Jones, Individually and trading and doing business as Real Realty.**

**Appeal of FARMERS FIRE INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued Oct. 29, 1986.

Filed Jan. 30, 1987.

376

C. Robert Keenan, III, Pittsburgh, for appellant.

John W. Smart, Pittsburgh, for Insurance Co. of North America, appellee.

Paul W. Roman, Jr., Pittsburgh, for Barnet, appellee.

John B. Nicklas, Jr., Pittsburgh, for Jones, appellee.

Before WICKERSHAM, BROSKY and JOHNSON, JJ.

BROSKY, Judge:

This is an appeal from an order denying appellant's posttrial motions. Judgment was entered against appellant after a nonjury trial in which appellant was found liable for property damages suffered as a result of a fire to premises it had insured.

Appellant raises four issues for disposition: (1) whether an insurer is obligated to provide notice to a mortgagee of a lapse in insurance coverage upon the mortgaged premises, (2) whether the mortgagee's failure to keep adequate records as to its debtor's property insurance constitutes negligence so as to prevent recovery by the mortgagee, (3) whether the insurer can be held liable for acts or omissions of a broker where such insurance broker had the only contact with the insured, (4) whether the stipulation of an amount paid by an insurer to its insured is sufficient evidence of the insurer's damage in a subrogation action against another insurer allegedly liable for the debt to the subrogor.

We have carefully considered the above issues and the arguments presented by counsel respective to each and find the entry of the challenged order was improper. Accordingly, we reverse the order entered by the trial court.

The facts giving rise to this appeal can be summarized as follows: In 1976, Ronald and Margaret Rall, bought a home which was financed by appellee First Federal Savings and Loan Association. First Federal took a mortgage interest in the property to secure the loan. The Ralls' secured property insurance, through the aid of their real estate broker, George Jones, who utilized Barnet, Inc., an insurance broker, from appellant Farmer's Fire Insurance Company for the period of July 15, 1976 to July 15, 1979. The Ralls paid the first two years premiums but failed to pay the third, whereupon, that installment was paid by Jones who then notified the Ralls that the policy would not be renewed unless payment was made. Payment was not made by the Ralls or anyone else subsequent to that time.

On October 20, 1980, more than a year after the policy's expiration date, a fire occurred at the mortgaged premises. Payment of the mortgage had been insured by Insurance Company of North America (INA). INA paid First Federal the balance of the mortgage and then sued Farmer's Fire and the Ralls as subrogee. A non-jury trial held on September 26, 1984 in the Court of Common Pleas of Allegheny County resulted in a verdict in favor of INA against the Ralls and Farmers Fire, but in favor of Jones and Barnet, who had been joined by Farmers Fire. This appeal by Farmers Fire followed.

The initial issue before us is whether or not an insurance company must notify a mortgagee of the expiration of a homeowner's policy issued on premises of which the mortgagee possesses a mortgage interest and where the policy contains a standard mortgage clause and identifies the mortgagee. Appellant, in contest of this position, contends that appellee, INA, has failed to distinguish between cancellation or non-renewal of a policy on the one hand and expiration of a policy on the other.

■ "Renewal" is defined at 40 P.S. § 1171.3 [1] as "the issuance and delivery by an insurer of a policy superseding at the end of the policy period a policy previously issued and delivered by the same insurer...." Hence, as contended by appellant, the "expiration" of a policy may indeed be different than the "non-renewal" of a policy; but nevertheless, if an insurer does not issue and deliver a similar policy to the policy holder, it has not renewed the policy as defined in section 1171.3. Title 40 § P.S. § 1171.5(a)(9) makes it an unfair practice to cancel or refuse to renew any policy unless one of several enumerated situations exist. One such situation where an insurer may refuse to renew a policy is where the insured fails to pay a premium. However, 40 P.S. § 1171.5(a)(9) further states that no refusal to renew shall be effective unless a written notice of such refusal is received by the insured. An additional section, 40 P.S. § 1171.5(c)(2), would excuse the insurer from providing

---

1. Part of the Unfair Insurance Practices Act, July 22, 1974.

notice of cancellation or refusal to renew if the insurer has manifested its willingness to renew by issuing or offering to issue a renewal policy. Still another section, 40 P.S. § 1171.5(c)(2), would likewise excuse the insurer from providing notice if the insured has demonstrated by overt act *other than mere non-payment* of the premium that he does not wish coverage to be renewed.

■ What appears clear from these provisions is that after an individual is insured by a homeowner's policy he must be offered an opportunity to renew his coverage upon expiration of that policy, or at least be notified that his coverage will not be renewed. Any doubt in this regard is eliminated after reviewing the language of the Commonwealth Court in *Aegis Security Insurance Company v. Commonwealth Insurance Department*, infra.

■ In *Aegis Security Insurance Company v. Commonwealth Insurance Department*, 84 Pa.Cmwlth. 163, 478 A.2d 944 (1984), the Commonwealth Court was faced with a similar fact pattern to the one presented here. In *Aegis*, a homeowner's policy for an effective one-year period was issued to an individual on March 10, 1981. On December 23, 1981, an agent of Aegis mailed a memorandum which stated in relevant part:

> The subject policy covering your 1972 Freedom mobile home will expire on March 10, 1982. We will not order a renewal of this policy unless you authorize us to do so either by telephone or mail. Please advise by January 14, 1982.

A second and identical notice was sent in February of 1982 when no response was received. On April 17, 1982, after the policy's "expiration date," the insured's mobile home was destroyed by fire. Finding that the "notices" sent to the insured were insufficient to constitute an offer to renew under Section 5(c)(1), the insurer was not relieved of its obligation to notify the insured of non-renewal of the policy. Having failed to satisfy the Section 5(c)(1) offer of renewal or the Section 5(a)(9) notice of cancellation or nonrenewal,

the policy had to be reinstated and coverage provided. The court's discussion is instructive here:

> Section 5(a)(9) of the Act establishes minimum requirements for a notice of cancellation or nonrenewal of policies. This section does not apply when the insurer makes a valid offer to renew under Section 5(c)(1) to the insured or when the insured, by an overt act, demonstrates that he does not desire the renewal of the policy under Section 5(c)(2). For example, when the insured does not pay the renewal premium due after a valid offer to renew is made, the insurer is not required to send a notice of cancellation.[2] But, on the other hand, when the insurer does not send a valid offer to renew, the policy coverage must continue unless the insured receives a notice of cancellation.

478 A.2d at 946. Consequently, it seems clear that appellant was required to send notice to the insured that coverage was lapsing or alternatively, to offer renewal of the policy. Furthermore, it is also apparent, upon reviewing our case law, that appellant was obligated to give similar treatment to First Federal as mortgagee.

■ This Court in *Guarantee Trust and Safe Deposit Company v. Home Mutual Fire Insurance Company*, 180 Pa.Super. 1, 4–5, 117 A.2d 824, 825–826 (1955), set forth the well-settled law in Pennsylvania with respect to the effect of a Standard Mortgage Clause in a fire insurance policy:

**2.** This statement is consistent with our Supreme Court's later holding in *Federal Kemper Insurance Company v. Com. Insurance Dept.*, 509 Pa. 1, 500 A.2d 796 (1985), which contrary to appellants' assertions did not hold that expiration of a policy for nonpayment of premium is an overt act of the insured and not the insurer so as to take such a lapse out of Pennsylvania's insurance statutes and regulations. Rather *Federal Kemper* reaffirmed that notice of cancellation is not necessary when the insured demonstrates a wish to cancel, and found there that knowing nonpayment of a premium after becoming due, under the facts of that case, constituted objective conduct manifesting such an intent. Adhering to the "mere nonpayment" language, the Court found that the conduct of the insured in that case went beyond mere nonpayment and was sufficient to evidence an intent to discontinue coverage.

that a standard mortgage clause in a fire insurance policy creates a separate, distinct and independent contract of insurance in favor of Mortgagee ... As stated in *Abbottsford Building and Loan Association vs. William Penn Fire Insurance Company*, 130 Pa. Super. 422, 426, 197 A. 504, 506: "It follows that the policies with the mortgagee clause attached created, in the instant case, two contracts with appellee, the one insuring the interest of the mortgagor owner, and the other protecting appellant's interest as mortgagee; and the mortgagor owner, by act or failure to act, could not nullify or decrease the amount of protection which the policies afforded appellant."

The Court goes on to state:

Where insurance of the mortgagee's interest against loss by fire is obtained by use of the mortgagee clause it provides the same benefit to the mortgagee as if it had taken out a separate policy free from the conditions imposed upon the mortgagor owner.

Consequently, and contrary to appellant's contention, it did indeed, as insurer, have an obligation to notify the mortgagee, First Federal,[3] of the lapse in coverage.

Appellant argues alternatively that, if it is liable to INA, then it is entitled to contribution or indemnity from additional appellees Jones and Barnet. As just indicated, appellant's liability is based upon its duty as insurer to notify not only the homeowner, but the mortgagee as well. Consequently, appellant is not entitled to contribution or indemnity unless it establishes that this duty has been

---

**3.** We find totally unpersuasive appellant's second argument that First Federal was negligent for not instituting a system which would provide themselves with notice of when insurance on premises which they have financed was due to expire. Appellant had a duty to notify First Federal of the imminent lapse of coverage and First Federal was entitled to rely upon appellant in this regard. First Federal could have chosen to take additional steps to further protect itself from the unfortunate result here, but had no duty to do so. Consequently, appellant cannot shift its liability by alleging that First Federal did not institute every conceivable protection against the negligence of others.

delegated to either Barnet, Inc. or Jones.[4]  By stipulation at trial it was established that Jones acted on behalf of the Ralls, and had no business affiliation with either Barnet or appellant.  Therefore, appellant has failed to establish any grounds for contribution from appellee Jones.

Barnet, Inc. apparently acted as agent for appellant, and, in fact, wrote the policy in question despite the fact that appellant, in its brief, argues that Barnet was a broker and not an agent.  However, in either case, a review of the record fails to reveal any evidence that Barnet was responsible for sending out nonrenewal notices to mortgagees in appellant's behalf.  In fact, the evidence indicated that neither notices nor renewal policies were routinely sent out by either Farmer's Fire or Barnet.  Accordingly, the trial court's denial of appellant's post-trial motion in this regard was proper.

■  Appellant lastly challenges the sufficiency of the proof of damages offered at trial.  It was both stipulated and testified to at trial that INA paid the sum of $8,173.98 to First Federal, which was the outstanding balance of the mortgage.  Farmers Fire did, however, contest the fact that this represented any indication of the extent of the damage to the insured premises.[5]  Despite this contest, INA offered no evidence of the damage caused by the fire.

INA, as subrogee to First Federal, is entitled to any right of recovery enjoyed by First Federal.  *Associated Hospital Service of Philadelphia v. Pustilnik*, 262 Pa.Super. 600, 396 A.2d 1332 (1979) (vacated on other grounds), 497 Pa.

---

**4.**  Appellant argues in its brief that it is not responsible for the acts of omissions of the brokers underlying this action and implies that they were somehow negligently responsible for the result here.  However, it has not been established that the brokers owed any duty to notify either the Ralls or First Federal.  Rather, this duty is statutorily imposed upon the insurer.

**5.**  INA did attach a proof of loss form filed by First Federal with INA which indicated that the damage to the premises as a result of the fire was $16,000.  However, Farmers Fire denied that this was an accurate assessment of the damage caused by the fire.  Consequently, INA was not relieved of its obligation to establish the damage sustained by First Federal as a result of the fire.

221, 439 A.2d 1149 (1981). Had First Federal chosen to pursue it, First Federal's right to recovery from appellant, while limited to its insurable interest, the balance of the mortgage, is based upon loss caused by the fire to premises it had financed, not upon INA's loss as a result of insuring payment of First Federal's mortgage. Consequently, First Federal and INA as First Federal's subrogee, would not be entitled to recovery from appellant unless it has proven that a fire occurred and caused at least $8,173.98 in damage. No evidence of any kind was offered at trial in this respect.

■ It is well established that a plaintiff has the burden of presenting evidence sufficient to calculate damages to a reasonable degree of certainty. *Gordon v. Trovato*, 234 Pa.Super. 279, 338 A.2d 653 (1975). This has not been done. We cannot agree with INA that the evidence offered, that they paid the sum in question to First Federal, established prima facie proof of damages sufficient to shift the burden to appellant. The payment by INA to First Federal based upon its obligation to indemnify First Federal does not establish the obligations or liability of Farmers Fire to First Federal. INA has apparently misapprehended its right of recovery. INA states in its brief that the damage they sustained is "the sum it paid to First Federal pursuant to the terms of their contract." This is indeed a correct statement of the loss INA has suffered. However, INA did not file a cause of action against appellant based upon *its* relationship with appellant. Conversely, INA has not established that Farmers Fire owed any duty to INA. INA's right of recovery as subrogee is based upon its indemnification of First Federal and is parallel to an action instituted by First Federal against Farmers Fire. Had First Federal sued appellant it would have been required to show the extent of damage caused by the fire; consequently, INA, as subrogee, must do the same. Therefore, we must find that INA has failed in this important respect of proving the damage to which they, as First Federal's subrogee, were entitled to recover.

For the reasons discussed above, the order in question which dismissed appellant's post-trial motion regarding INA's failure to prove damages must be reversed.

Order reversed and remanded to the trial court for entry of judgment in appellant's favor.