**Harold H. HORN and Minnie L. Horn, Appellants,**

v.

**HEDGECOKE INSURANCE AGENCY, Appellee.**

**No. 07–91–0118–CV.**

Court of Appeals of Texas, Amarillo.

July 31, 1992.

Rehearing Denied Aug. 26, 1992.

Malone & Sturgeon, P.C., Ben L. Sturgeon, Vernon, for appellants.

Stokes & Fields, Thomas D. Farris, Amarillo, for appellee.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

REYNOLDS, Chief Justice.

This appeal presents the novel question whether an insurance agency, through which an insurance policy was issued naming a mortgagee to whom a loss was pay-

able and who paid the premium, has a duty of reasonably informing the mortgagee of the expiration and non-renewal of the policy by the named insured. Reaching an affirmative answer under the developed facts of this cause, we will reverse the take-nothing summary judgment suffered by the mortgagee and remand the cause.

A policy of fire insurance covering a residence in Amarillo was issued by North American Lloyds of Texas (NALOT) to Johnny London as the named insured. The policy was sold through Hedgecoke Insurance Agency pursuant to its actual attorney-in-fact agreement with NALOT, by which Hedgecoke was authorized to solicit, procure, receive and accept proposals for insurance upon risks to be insured by NALOT, and to collect, receive and receipt for the premiums.

The term of the policy was from 21 August 1987 to 21 August 1988. The premium was paid by Harold H. Horn, who was the named mortgagee in the loss payable clause of the policy.

The policy contained a mortgage clause, which provided that:

> This policy, as to the interest of the mortgagee only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property....
>
> \* \* \* \* \* \*
>
> This policy may be cancelled as to the interest of any mortgagee named herein by giving such mortgagee ten days written notice.

The policy also contained Standard Texas Endorsements. As material to the appeal, endorsement no. 29 contained the following language:

> At the option of the insured, this policy must be renewed at expiration unless this company has mailed written notice to the insured and to the mortgagee specifically named in the policy of its intention to decline renewal at least thirty days in advance of the expiration date of this policy.

And as pertinent, endorsement no. 133 was worded:

> It is hereby understood and agreed that the Notice of Cancellation as contained in the Mortgage Clause of the above policies is amended as follows: "This policy may be cancelled as to the interest of any mortgagee named hereon by giving such mortgagee thirty days written notice except in the event cancellation is for non-payment of premium and then this policy may be cancelled as to the interest of any mortgagee named hereon by giving such mortgagee fourteen days written notice."

The policy, according to Hedgecoke, was one requiring the insured's order before its issuance, and Hedgecoke's servicing included notifying the insured the policy was about to lapse and to make arrangements to renew it.

On 20 June 1988, Hedgecoke sent a notice to London,[1] but not to Horn, that read:

> Mr. London; The Fire and EC policy on your home comes up on 8–21–88. the renewal premium will be $336.00. I realize your mortgagee pays for this coverage; however I need you (sic) ok prior to ordering the policy. please conatc (sic) me prior to the expiration date to avoid a lapse in coverage.

Not having a response from London by 24 August 1988, Hedgecoke then advised him, but not to Horn, that since he did not respond to the renewal notice, his policy expired on 21 August 1988 and his insurance was not renewed, but if he still desired coverage to contact the agency immediately. London did not contact Hedgecoke.

On 12 December 1988, the property was destroyed by fire and the loss was reported to Hedgecoke the next day. Coverage was denied by NALOT.[2] Upon denial of coverage, Harold H. Horn and Minnie L. Horn

---

1. The record indicates that the insured property was sold to David Flores in March of 1988, and that Hedgecoke was notified by a title insurance company of the change of ownership on 16 March 1988. Inasmuch as the parties do not mention this event on appeal, it will not be further noticed.

2. North American Lloyds of Texas was placed in receivership in May of 1989.

brought the action underlying this appeal against Hedgecoke.

Primarily, the Horns alleged that Hedgecoke failed in its duty to keep the mortgagee Horn fully informed of the expiration of the policy and the insured's failure to pay the premium. In this regard, they claimed that by virtue of its endorsements, the policy was automatically renewed as to the mortgagee unless he was given notice of the intent not to renew, and that he was not contacted in any manner by Hedgecoke regarding expiration, non-renewal or cancellation of insurance coverage on the property.

Additionally, the Horns alleged that Hedgecoke had breached its duty of good faith and fair dealing, and had violated the Texas Deceptive Trade Practices–Consumer Protection Act and the Texas Insurance Code. They sought damages commensurate with their alleged causes of action.

After answering, Hedgecoke moved for summary judgment on the entire cause. With respect to the Horns' primary cause of action, Hedgecoke claimed entitlement to judgment as a matter of law for the reason that it had no duty under Texas law to inform the Horns as to the status of the subject insurance policy, the expiration date of the policy and the insured's failure to pay the premium. Thereafter, the Horns sought partial summary judgment on the issue of liability, asserting that Hedgecoke was liable as a matter of law because it had, and negligently breached, the legal duty to inform them of the cancellation or non-renewal of the policy.

Following a hearing, the trial court denied the Horns' motion, and granted Hedgecoke's motion without specifying the ground or grounds upon which its take-nothing summary judgment was rendered. The Horns attack the judgment with a general and two specific points of error, but they do not complain of the denial of their motion for partial summary judgment.

With their second point, the Horns contend the court erred in holding that as a matter of law there was no duty upon Hedgecoke under any theory pleaded to inform them as to the status of the fire insurance policy regarding expiration, non-renewal, the owner's failure to pay the premiums, or loss of fire insurance coverage on the home in which Harold H. Horn held an interest as mortgagee. In this connection, they submit that the mortgage clause, partially quoted in the forepart of this opinion, incorporated article 6.15 of the Texas Insurance Code Annotated (Vernon 1981) into the policy, the result of which was to make a new and independent contract between the mortgagee and the insurer, and to effect a separate insurance on the mortgagee's interest. Being a separate insurance contract on the mortgagee's interest, its validity is dependent solely on the acts of the mortgagee, and is not affected or invalidated by any act or neglect of the mortgagor in violation of the conditions of the policy that are unknown to the mortgagee. *Travelers Indemnity Company v. Storecraft, Inc.*, 491 S.W.2d 745, 748 (Tex.Civ.App.—Corpus Christi 1973, no writ); *Standard Fire Ins. Co. v. United States*, 407 F.2d 1295, 1300 (5th Cir.1969).

By virtue of the new and independent contract, the Horns continue, the mortgagee was also an "insured," and there is no question that Hedgecoke was the duly authorized agent for the insurer. Thus, Hedgecoke had the same duty to the mortgagee as if the mortgagee was his own customer, thereby invoking the holding in *Trinity Universal Ins. Co. v. Burnette*, 560 S.W.2d 440, 442 (Tex.Civ.App.—Beaumont 1977, no writ), that, as quoted from *Cateora v. British Atlantic Assurance, Ltd.*, 282 F.Supp. 167, 174 (S.D.Tex.1968), "the agent has a duty to keep his clients fully informed so they can remain safely insured at all times."

This duty has been extended to the mortgagee, the Horns further propose on the authority of *Kitching v. Zamora*, 695 S.W.2d 553, 554 (Tex.1985), wherein the Court held:

An insurance agent, who receives commissions from a customer's payment of insurance policy premiums, has a duty of reasonably attempting to keep that customer informed about the customer's insurance policy expiration date when the

agent receives information pertaining to the expiration date that is intended for the customer.

They also cite *First Bank & Trust v. Kraehnke*, 732 S.W.2d 69, 77 (Tex.App.— Beaumont 1987), for its holding that the mortgagee bank was an insured on the policy and that the local agent owed the bank the "greatest possible duty." [3]

Nevertheless, the Horns acknowledge that Texas courts have not specifically addressed this fact scenario. They do, however, submit that their contention is supported by the holdings of several courts from other states to the effect that where the policy provides the interest of the mortgagee shall not be adversely affected by the neglect of the owner, the mortgagee is entitled to notification of expiration and non-renewal. *See, e.g., Waco Fire & Cas. Ins. Co. v. Jones*, 180 Ga.App. 26, 348 S.E.2d 547 (1986); *Insurance Co. of North America v. Rall*, 360 Pa.Super. 374, 520 A.2d 506 (1987); *Bankers & Shippers Ins. v. Meridian Naval*, 431 So.2d 1123 (Miss. 1983); *Stevenson v. Mo. Prop. Ins. Place. Fac.*, 770 S.W.2d 288 (Mo.App.1989).

As its immediate reply, Hedgecoke declares that none of the cases cited by the Horns impose any duty upon an insurance agency to notify a mortgagee on a policy of insurance of the cancellation or impending cancellation of such policy. The various cited cases from Texas and other jurisdictions, Hedgecoke says, imposes such a duty upon an insurance company, not upon an insurance agency. Disputing the Horns' contention that such a duty is likewise applicable to an insurance agency, Hedgecoke next replies that the agents of insurers do not have a duty to prevent the insured from being self-deceived, *McNeill v. McDavid Insurance Agency*, 594 S.W.2d 198, 203 (Tex.Civ.App.—Fort Worth 1980, no writ), particularly since it is well settled Texas law that an insured is presumed to know the contents of his or her insurance policy. *Union Nat. Bank of Little Rock v. Moriarty*, 746 S.W.2d 249, 250 (Tex.App.—Tex-

arkana 1987, writ denied). Consequently, Hedgecoke concludes, there was no duty on Hedgecoke to remind or point out to the Horns the status of the insurance policy, its expiration date, or the property owner's failure to pay the premium.

In this policy, the effect of the mortgage clause, operating in conjunction with the naming of Harold H. Horn as mortgagee to whom a loss was payable as his interest shall appear, was to make a new and independent contract between mortgagee Horn and the insurer. *Camden Fire Ins. Ass'n v. Harold E. Clayton & Co.*, 117 Tex. 414, 6 S.W.2d 1029, 1030 (1928). It is undisputed that mortgagee Horn paid, and Hedgecoke received, the premium for the policy; indeed, Hedgecoke acknowledged in its renewal notice to London that it "realize[s] your mortgagee pays for this coverage." Also undisputed is Hedgecoke's admission that its servicing includes notifying the insured of the expiration of the policy and the arrangements to renew it.

Given these established facts, we logically extend the holding of *Kitching v. Zamora*, 695 S.W.2d at 554, to hold: An insurance agent who receives a commission from the payment of the insurance policy premium by the named mortgagee in the policy, knowing that the mortgagee pays for the coverage, and whose servicing of the policy includes notification to the insured of the expiration and non-renewal of the policy, has a duty of reasonably attempting to keep the mortgagee informed about the policy expiration date and non-renewal. Consequently, Hedgecoke's summary judgment proof was insufficient as a matter of law to establish it had no duty to so notify mortgagee Horn, thereby negating its entitlement to summary judgment on that ground. *Fantastic Homes, Inc. v. Combs*, 596 S.W.2d 502 (Tex.1979). The Horns' second point of error is sustained.

The sustainment of the second point, necessitating a reversal of the judgment and a remand of the cause, pretermits the reso-

**3.** *Kraehnke* was affirmed in part and reversed in part in *Southern City Mut. v. First Bank &* *Trust*, 750 S.W.2d 170 (Tex.1988).

**300**

lution of other error alleged by the Horns. A resolution would not alter the disposition of the appeal, and the same contentions may not arise in the same posture in the event of further proceedings. *Cornell & Co. v. Pace,* 703 S.W.2d 398, 404 (Tex. App.—Amarillo 1986, writ ref'd n.r.e.).

The summary judgment is reversed, and the cause is remanded to the trial court.