

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00330-CV

_____

ALLISON PUBLICATIONS, LLC, Appellant and Appellee

V.

JANE DOE, Appellee and Appellant

On Appeal from the 431st District Court
Denton County, Texas
Trial Court No. 21-4755-431

Before Birdwell and Walker, JJ., and Gonzalez, J.[1]
Opinion by Justice Walker

---

[1]The honorable Ruben Gonzalez, Judge of the 432nd District Court, sitting by assignment of the Chief Justice of the Texas Supreme Court pursuant to Section 74.003(h) of the Government Code. *See* Tex. Gov't Code Ann. § 74.003(h).

## OPINION

## I. INTRODUCTION

Appellant Allison Publications, LLC (Allison) appeals the trial court's granting of Appellee Jane Doe's motion to dismiss brought pursuant to the Texas Citizens Protection Act (TCPA). Despite Doe proceeding under complete anonymity, she was awarded dismissal with prejudice, attorney's fees, $10,000 in sanctions, and costs of court. In four issues, Allison complains that the trial court erred because (1) Texas law does not allow a trial court to grant affirmative relief to a completely anonymous party, (2) the TCPA did not apply to this case, (3) the record and the TCPA did not support the award of sanctions and attorney's fees, and (4) the trial court should have granted Allison's motions for discovery that sought Doe's name and other identifying information. In a cross-appeal, Doe contends that the trial court (1) improperly dismissed as moot her Rule 91a motion to dismiss—which she filed in addition to her TCPA motion—and (2) miscalculated her award of attorney's fees.

Because the trial court's subject matter jurisdiction had not been established to permit its entrance of a final judgment on Doe's TCPA motion to dismiss, we will reverse the trial court's judgment in its entirety and remand for further proceedings consistent with this opinion. *See* Tex. R. App. P. 43.2(d), 43.3(a).

## II. BACKGROUND

### A. FACTUAL BACKGROUND

Allison publishes regional and specialty publications in Texas, such as *D Magazine*. According to Allison, in April 2021, three of its advertisers received phone calls from a person who identified herself as a journalist named "Maya" or "Maya Pembledon." The caller allegedly told the advertisers that Allison is a racist publisher and encouraged them to cease advertising with Allison. The advertisers expressed concerns to Allison after receiving the calls, and at least one decided not to renew its advertising contract with Allison.

Allison learned that the calls had been made using one or more VoIP phone numbers, which are internet-based numbers that are difficult to trace and, thus, help maintain the anonymity of the caller. To independently "identify [the caller] and to provide her with accurate information—and to remediate the reputational and relational damage her calls caused," Allison placed numerous calls to these VoIP numbers that were not answered or returned. Allison also employed an attorney and a private investigator to attempt to identify the caller, but its efforts proved unsuccessful.

### B. PROCEDURAL BACKGROUND

Allison sued "Jane Doe" on June 7, 2021, for business disparagement and sought to subpoena the records of Bandwidth.com, a wholesaler of VoIP numbers that owned the number used by Doe to call Allison's advertisers. Bandwidth.com

notified Allison that it did not have access to Doe's identity because it had sold the right to use Doe's VoIP number to another entity called Pinger, Inc.

On June 29, 2021, someone declaring to be the "Jane Doe" named in the petition filed a special appearance[2] and a motion to dismiss under section 27.003 of the TCPA. Within and subject to the special appearance, Doe also pleaded a general denial. All were filed anonymously and without any identifying information. Instead, they attached a "Declaration of Jane Doe"—bearing the signature "Jane Doe"—through which she asserted the need to preserve her anonymity to protect against "reprisals" such as Allison's lawsuit and to allow her reporting to "stand on its own." Doe claimed to be a journalist who sought information from certain of Allison's advertisers for a project investigating an alleged lack of diversity and inclusion of racial minorities at publications located in major U.S. cities.

In her TCPA motion,[3] Doe argued that dismissal was appropriate because (1) Allison's petition had not established a prima facie case for business disparagement and (2) Doe had established an affirmative defense under Section 73.055 of the Defamation Mitigation Act (DMA) because Allison failed to serve upon Doe a timely request for correction, clarification, or retraction. Doe also sought attorney's fees and sanctions as allowed under the TCPA.

---

[2]At a hearing on her motions, Doe waived her special appearance and entered a general appearance.

[3]Doe filed an amended TCPA motion to dismiss on August 19, 2021.

4

In response, Allison filed two motions: (1) a motion for the court to order Doe to provide identifying information pursuant to the pleading requirements of Sections 30.014 and 30.015 of the Texas Civil Practice and Remedies Code and (2) a motion for limited discovery under TCPA section 27.006 seeking to subpoena Pinger, Inc.'s records and to issue written discovery requests to Doe or to depose Doe. Allison claimed that good cause existed for the court to grant its second motion because the requested information—including Doe's identity—was needed to defend against Doe's TCPA motion to dismiss and to support the elements of its business disparagement claim. The trial court denied both of Allison's motions.

Doe then filed a Rule 91a motion to dismiss, arguing that Allison had failed to plead with sufficient specificity which of Doe's statements were defamatory and that the statement that Allison was "racist" was not capable of a defamatory meaning. Doe also reasserted that dismissal was required under Section 73.055 of the DMA.

In its final judgment, the trial court granted Doe's TCPA motion, awarding her $10,650 in attorneys' fees and $10,000 in sanctions. It further ordered that "to preserve the anonymity of [Doe], all payments of this judgment shall be made to The Law Offices of Tony McDonald Client Trust Account to be held in trust by The Law Offices of Tony McDonald for the benefit of [Doe]." The judgment also denied her Rule 91a motion to dismiss as "moot." Allison appealed, and Doe cross-appealed the denial of her Rule 91a motion and the trial court's award of attorneys' fees.

Doe's identity remains unknown to this court, the trial court, Allison, and even Doe's own attorney.[4]

### III.  DOE'S EXTRAORDINARY RELIEF

With its first issue, Allison asks if the trial court erred by awarding affirmative relief to the unidentified Doe.  We will answer yes, because the trial court's subject matter jurisdiction had not been established to entertain Doe's TCPA motion.

Invoking the anonymous speech protections of the First Amendment, Doe attempts to pave a road for recovery that, in our view, has never been paved in the history of American jurisprudence: whereby a wholly unidentified, unnamed person may invoke a court's authority to obtain affirmative, merits-based, and dispositive relief against another litigant.  *See Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 467 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd) ("[A] motion to dismiss under the TCPA constitutes a claim for affirmative relief . . . ."); *Buzbee v. Clear Channel Outdoor, LLC*, 616 S.W.3d 14, 22 (Tex. App.—Houston [14th Dist.] 2020, no pet.) ("[A] dismissal under the TCPA is a judgment on the merits and carries res judicata implications."); *Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs.*, 500 S.W.3d 26, 40 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (same).

---

[4]Doe's attorney stated at an August 19 hearing that he has "intentionally avoided learning [Doe's] name so that [he] can't ever be forced to divulge it."  He maintained this position at oral arguments before this court.

## A. COURTS RECOGNIZE LIMITED RIGHT TO PROCEED PSEUDONYMOUSLY BUT NOT IN COMPLETE ANONYMITY

Doe contends that her request is well-founded because courts across the nation routinely recognize a litigant's right to seek affirmative relief "pseudonymously." She directs us to sixteen such cases,[5] each decided in various non-Texas state and federal jurisdictions. Then, quoting law professor Eugene Volokh, Doe emphasizes that plaintiffs are often permitted to proceed pseudonymously if "the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." Eugene Volokh, *The Law of Pseudonymous Litigation*, 73 Hastings L.J. (Jan. 13, 2021 draft) (manuscript at 42), https://www2.law.ucla.edu/volokh/pseudonym.pdf (internal quotations omitted). This, Doe argues, is precisely the situation in which she

---

[5]Doe cites: *Doe v. Harris*, 640 F.3d 972 (9th Cir. 2011); *Doe v. City of N.Y.*, 15 F.3d 264 (2d Cir. 1994); *Doe v. Civiletti*, 635 F.2d 88 (2d Cir. 1980); *Doe [later renamed to J.L.] v. Regis Univ.*, No. 1:21-cv-00580-NYW, 2021 WL 5056239, at *1 (D. Colo. Mar. 2, 2021, order); *E.B. v. Landry*, No. 19-862-JWD-SDJ, 2020 WL 5775148, at *1 (M.D. La. Sept. 28, 2020, order); *Doe v. Trs. of Dartmouth Coll.*, No. 18-cv-040-LM, 2018 WL 2048385, at *1 (D.N.H. May 2, 2018, order); *Doe v. Grinnell Col.*, No. 4:17-cv-079-RGE-SBJ, 2017 WL 11646145, at *1 (S.D. Iowa July 10, 2017, order); *United States Dep't of Just. v. Utah Dep't of Com.*, No 2:16-cv-00611-DN-DBP, 2017 WL 963203, at *1 (D. Utah Mar. 10, 2017); *Doe v. United States*, 210 F. Supp. 3d 1169 (W.D. Mo. 2016); *Doe v. Univ. of St. Thomas*, No. 16-cv-1127-ADM-KMM, 2016 WL 9307609, at *1 (D. Minn. May 25, 2016, order); *In re Ashley Madison Customer Data Sec. Breach Litig.*, MDL No. 2669, 2016 WL 1366616, at *1 (E.D. Mo. Apr. 6, 2016); *Doe v. Alger*, 317 F.R.D. 37 (W.D. Va. 2016); *M.J. v. Jacksonville Hous. Auth.*, No. 3:00-cv-711-J-37MCR, 2011 WL 4031099, at *1 (M.D. Fla. Sept. 12, 2011, order); *Doe I-VIII v. Sturdivant*, No. 06-10214, 2006 WL 8432896, at *1 (E.D. Mich. Apr. 7, 2006); *Doe v. Szul Jewelry, Inc.*, 2008 N.Y. Slip. Op. 31382(U), 2008 WL 2157893, at *1 (Sup. Ct. 2008); *Doe v. O'Neill*, No. C.A. W.C. 86-354, 1987 WL 859818, at *1 (R.I. Super. Jan. 6, 1987).

finds herself: defending against an infringement upon her right to First Amendment anonymous speech, the loss of which would be the exact injury incurred if her identity was disclosed.

But Doe's argument and the authority on which it relies are irrelevant to our case—chiefly because Doe conflates judicially-facilitated *pseudonymity* with *total anonymity*. Each of the sixteen cases cited by Doe involved a pseudonymous party whose name and identity were known to the trial court and also to the opposing party; the litigants merely disputed whether that party's real name should be revealed to the public generally. *See, e.g.*, *City of N.Y.*, 15 F.3d at 265 (holding that employee had right to keep private from public disclosure his HIV-positive status); *Utah Dep't of Com.*, 2017 WL 963203, at *2 (granting intervenors' motion to proceed using pseudonyms because they had a right to keep private from public disclosure their prescriptions and medical conditions); *M.J.*, 2011 WL 4031099, at *1–3 (granting plaintiffs' motion to proceed using pseudonyms because they had a right to keep private from public disclosure their juvenile criminal records).

We fail to see how these cases are instructive for deciding how to proceed with the wholly-unknown Doe. To the contrary, we have neither discovered nor been directed to any cases—in any jurisdiction—that stand for the proposition that a person unknown to the trial court, the opposing party, and her own attorney can proceed and be awarded the type of relief obtained here by Doe.

8

## B. Texas Law Does Not Contemplate Such Relief For Unknown Litigants

Doe further argues that the TCPA and Texas pleading rules give wide latitude to the trial court to proceed with a completely anonymous party. The TCPA, she says, exists precisely to protect anonymous speech and delineates no requirement that movants under Section 27.003 be known—something the legislature could have included had it desired to deny relief to anonymous parties. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a). In this vein, Doe notes that no Texas court has "yet to object" to an anonymous party moving for TCPA relief, citing only to *Glassdoor, Inc. v. Andra Grp., L.P.* 575 S.W.3d 523, 525 (Tex. 2019).

In *Glassdoor, Inc.*, a clothing retailer filed a Rule 202 petition for discovery to obtain identifying information of people who anonymously left negative reviews of the retailer's business on the website Glassdoor.com. *Id.*; *see* Tex. R. Civ. P. 202. Specifically, the retailer sought to depose a representative of Glassdoor, Inc., to discover the reviewers' identities. *Glassdoor, Inc.*, 575 S.W.3d at 525. Glassdoor, Inc. then filed a TCPA motion to dismiss, which was joined anonymously by two of the reviewers identified only as Doe 1 and Doe 2.[6] *Id.* The trial court denied Glassdoor's TCPA motion and granted the retailer's discovery request. *Id.* at 526.

---

[6]Doe 1 and Doe 2 never sought to formally join the proceedings as parties and the retailer did not object to their joining of Glassdoor, Inc.'s motion. *Glassdoor, Inc. v. Andra Group, LP*, 560 S.W.3d 281, 285 n.1 (Tex. App.—Dallas 2017), *judgment vacated, cause dismissed*, 575 S.W.3d 523 (Tex. 2019).

On appeal, the supreme court was asked whether the trial court had erred in denying Glassdoor, Inc.'s motion and granting the retailer's Rule 202 discovery request. *Id.* at 525. However, the court did not address these issues, holding that the dispute was moot because any of the retailer's potential claims were barred by the applicable statute of limitations:

> Andra necessarily discovered the reviews before filing its Rule 202 petition, at which time its causes of action commenced even though it did not know the authors' identities. Andra could have filed suit and conducted discovery about those identities, but chose instead to proceed under Rule 202, thereby risking the timeliness of its potential claims. *See In re Does 1–10*, 242 S.W.3d 805, 814 (Tex. App.—Texarkana 2007, orig. proceeding) (noting that "in most cases involving Internet lawsuits based on libel or breach of contract, the scenario is that suit is brought against a Doe defendant, and the plaintiff at some point early in the proceeding seeks to discover his or her identity . . . through the discovery tools of that forum").

*Id.* at 530. Accordingly, the case was dismissed for want of jurisdiction. *Id.* at 531.

We are not convinced by Doe's arguments pertaining to statutory silence. That the TCPA fails to specifically prohibit anonymous movants cannot serve as evidence of an intentional omission by the legislature—particularly when such an interpretation would serve to contravene the explicit procedural rules of this state that require party identification.[7] This is because the "legislature does not alter major areas of law 'in

---

[7]*See* Tex. R. Civ. P. 45 (providing that pleadings must contain all information "required by any law or rule authorizing or regulating any particular action or defense"); Tex. Civ. Prac. & Rem. Code Ann. §§ 30.014 (requiring each party to include in its initial pleading the last three numbers of its driver's license and social security numbers), 30.015 (requiring each party who has appeared or answered to provide to the trial court clerk its name and current address); *see also Stinson v. King,*

10

vague terms' or no terms at all—'it does not, one might say, hide elephants in mouseholes.'" *Wasson Ints., Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 438 (Tex. 2016) (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468, 121 S. Ct. 903, 910 (2001); *see La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 565 (Tex. 1984) ("Generally, courts are to construe statutes so as to harmonize with other relevant laws, if possible."); *see also Massachusetts v. United N. & S. Dev. Co.*, 140 Tex. 417, 421 (1942) ("Interpretation by implication is permitted only to supply obvious intent not expressly stated, and never to contradict nor add to a statute.").

Neither does an absence of judicial objections to anonymous TCPA movants connote that Texas courts endorse such a practice. Instead, it emphasizes the novelty of Doe's position in that, as far as we can tell, no other court has been asked to address the issue. In *Glassdoor, Inc.*, the supreme court was rightly unconcerned with the anonymous Doe 1 and Doe 2 parties because it held that the retailer was time-barred from ever again suing any person, regardless of that person's identity, for leaving the negative reviews then at issue. *Glassdoor, Inc.*, 575 S.W.3d at 530–31.

---

83 S.W.2d 398, 399 (Tex. App.—Dallas 1935, writ dism'd) ("No suit can lawfully be prosecuted save in the name of a plaintiff and against a defendant having a legal entity either as a natural or as an artificial person. There must be a real plaintiff and a real defendant."); *Davis v. Raney Auto Co.*, 249 S.W. 878, 878 (Tex. App.—Texarkana 1923, no writ) ("Every individual who sues for his own private benefit must sue in his own name; that is, the name by which he is legally known as distinguished from other individuals."); *Midkiff v. Stephens*, 29 S.W. 54, 55 (Austin 1895, no writ) ("A plea that does not show on its face, and with certainty, in whose behalf it is made, presents no issue between the parties, and should be treated as a nullity.").

11

Having dismissed the entire case for want of jurisdiction, any subsequent ruling by the supreme court related to the Does' identities would have likely constituted an unlawful advisory opinion. *See Meeker v. Tarrant Cnty. Coll. Dist.*, 317 S.W.3d 754, 758–59 (Tex. App.—Fort Worth 2010, pet. denied) ("The mootness doctrine prevents courts from rendering advisory opinions, which are outside the jurisdiction conferred by . . . the Texas constitution.").

Further, in arguing that the TCPA "is meant to" protect anonymous speech, Doe forgets that the TCPA's purpose is actually twofold: to (1) protect a person's First Amendment rights, and also to (2) "protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code Ann. § 27.002. In other words, the TCPA's speech protections must be balanced by the rights of allegedly-defamed parties who are equally entitled to have their cases developed and tested in the courts of this state. *Id.* The second TCPA protection would be improperly subordinated to the first if a TCPA movant was entitled to merits-based relief as an anonymous party because a non-movant could never proffer a meaningful defense against an unknown foe. *See Sw. Refin. Co. v. Bernal*, 22 S.W.3d 425, 437 (Tex. 2000) ("And basic to the right to a fair trial—indeed, basic to the very essence of the adversarial process—is that each party have the opportunity to adequately and vigorously present any material claims and defenses."); *see also First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224–25 (Tex. 2017) (stating that Texas fair-notice pleading standards measure "whether the pleadings have

12

provided the opposing party sufficient information to enable that party to prepare a defense or a response").

Accordingly, we disagree with Doe that there exists a common law or statutory mechanism through which a completely anonymous TCPA movant may invoke a court's authority to obtain affirmative, merits-based, and dispositive relief.

## IV. DISCUSSION

We will now turn to traditional jurisdiction rules to analyze whether the trial court's subject matter jurisdiction had been established to authorize the entrance of its final judgment.

### A. JURISDICTION MUST BE ESTABLISHED FROM THE OUTSET

"As a general proposition, before a court may address the merits of any case, the court must have jurisdiction over the party or the property subject to the suit, jurisdiction over the subject matter, jurisdiction to enter the particular judgment, and capacity to act as a court." *The State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994). A court's jurisdiction "not only embraces the power to hear, but includes as well the authority to enter a judgment, and to carry that judgment into execution." *Morrow v. Corbin*, 62 S.W.2d 641, 645 (1933); *see Smith v. Clopton*, 4 Tex. 109, 114 (1849) ("The only inquiry then to be made at the institution of a suit is whether the facts of the case are such *as to entitle a party to a judgment in his favor* in either law or equity . . . ." (emphasis added)).

13

## B. SUBJECT MATTER JURISDICTION

Questions of party identification inherently bear upon a court's subject matter jurisdiction. *See Reddy P'ship/5900 N. Freeway LP v. Harris Cnty. Appraisal Dist.*, 370 S.W.3d 373, 376 (Tex. 2012) (addressing whether trial court had jurisdiction after a party was misnamed in petition); *Mapco, Inc. v. Carter*, 817 S.W.2d 686, 687 (Tex. 1991) (addressing whether trial court had jurisdiction to enter judgment against party not specifically named in petition); *Dunlap v. Southerlin*, 63 Tex. 38, 43 (1885) (addressing whether trial court had jurisdiction to enter judgment in favor of party not specifically named in petition). Subject matter jurisdiction is essential to the trial court's authority and "is never presumed and cannot be waived." *Tex. Ass'n of Bus. v. Tex. Air Cont. Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993). Appellate courts are duty-bound to examine issues of subject matter jurisdiction and may do so sua sponte. *Meeker*, 317 S.W.3d at 758–59; *see M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004). Issues of standing and mootness implicate subject matter jurisdiction and must be established at the outset of a case. *Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 442–43 (Tex. 1998); *see El Paso Cnty. v. El Paso Cnty. Emergency Servs. Dist. No. 1*, 622 S.W. 25, 36 (Tex. App.—El Paso 2020, no pet.) (explaining that standing and mootness are threshold issues because "an absence of subject-matter jurisdiction obviates a case from being heard.") (citing *Tex. Ass'n of Bus.*, 852 S.W.2d at 443–44).

## 1. Standard of Review

Whether the trial court has subject matter jurisdiction is a legal question that appellate courts review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Meeker,* 317 S.W.3d at 758–59. The burden of proof to establish subject matter jurisdiction rests upon the party who, by requesting affirmative relief, seeks to invoke the jurisdiction of the trial court. *Country Cmty. Timberlake Vill., L.P. v. HMW Special Util. Dist. of Harris*, 438 S.W.3d 661, 667 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (citing *Tex. Ass'n of Bus.,* 852 S.W.2d at 446); *see Kessling v. Friendswood Indep. Sch. Dist.*, 302 S.W.3d 373, 386 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (citing *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008)); *see also Pace Corp. v. Jackson*, 284 S.W.2d 340, 350 (Tex. 1955) ("[I]f one party is asserting a right to damages or some other active relief in his own behalf, the burden of proving his right to that relief still rests upon him. The time sequence in filing of pleadings can neither relieve him of his responsibilities nor deprive him of his advantages.")

When, as here, the appellate court sua sponte raises the issue of subject matter jurisdiction,[8] it must construe the pleadings in favor of the party invoking the trial court's jurisdiction and, if necessary, review the entire record to determine if any

---

[8]While Allison complained generally that the trial court erred in awarding Doe relief, it did not brief the issue as one implicating the trial court's subject matter jurisdiction.

evidence supports jurisdiction. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446; *see Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 582 n.86 (Tex. 2013). If the record and pleadings affirmatively negate the existence of jurisdiction the case should be dismissed, *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 96–97 (Tex. 2012), but if they "do not affirmatively demonstrate an incurable defect," the party should be afforded the opportunity to replead, *C.L. Westbrook, Jr. v. Penley*, 231 S.W.3d 389, 395 (Tex. 2007).

## 2. Standing

To establish standing, a party must allege facts sufficient to show that it—rather than a third party or the public at large—was personally injured and has a sufficient relationship with the lawsuit to have a justiciable interest in its outcome. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 155 (Tex. 2012); *Rhey v. Redic*, 408 S.W.3d 440, 456 (Tex. App.—El Paso 2013, no pet.). Such injury must be "concrete and particularized, actual or imminent, [and] not hypothetical." *DaimlerChrysler Corp.,* 252 S.W.3d at 304–05.

Put simply, Doe existed as a legal fiction to the trial court and thus she has not alleged sufficient facts to show that she is the true defendant with a connection to this case. *See Riston v. Doe*, 161 S.W.3d 525, 528 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) ("'John Doe' is a fictitious name used in legal proceedings to designate a person whose identity is unknown.") (citing BLACK'S LAW DICTIONARY 845 (7th ed. 1999)); Meg Tomlinson, *Krupski and Relation Back for Claims Against John Doe Defendants*, 86 Fordham L. Rev. 2071, 2084 (2018) ("While the use of fictitious defendants is not

16

favored, courts have recognized their utility as stand-ins for real parties to afford plaintiffs the opportunity to identify unknown defendants through discovery."); *cf. Herrera v. Cleveland*, 8 F.4th 493, 498 (7th Cir. 2021), *cert. denied*, 142 S. Ct. 1414 (2022); *Kemper Ins. Cos. v. Fed. Exp. Corp.*, 115 F. Supp. 2d 116, 125 (D. Mass. 2000); 3 Am. Jur. Trials § 681 (2022). It follows, then, that Doe's injury as alleged in her TCPA motion bore the same fictional quality and could not yet be shown for standing purposes to be concrete, particularized, and actual. *See DaimlerChrysler Corp.*, 252 S.W.3d at 304–05. Without knowing Doe's identity, the trial court was powerless to answer the most fundamental of questions: Who is Jane Doe? Being unable to answer this question, the trial court could not have reasonably determined that the real person standing behind the Jane Doe curtain was the actual defendant who had a personal stake in the case. *Id.*

We conclude that Doe's standing had not been sufficiently proven to invoke the trial court's subject matter jurisdiction.

### 3. Mootness

The mootness doctrine requires that a controversy exist between the parties at every stage of the litigation. *Meeker*, 317 S.W.3d at 759. An issue is moot "when a party seeks a ruling on some matter that, when rendered, would not have any practical legal effect on a then-existing controversy." *Id.*; *see Brown v. Todd*, 53 S.W.3d 297, 302 (Tex. 2001) (explaining that, because courts are prohibited from issuing advisory opinions, all judicial decisions must have a binding effect on the parties). For a

17

judgment to have legal effect it "must be sufficiently definite and certain to define and protect the rights of all litigants, or it should provide a definite means of ascertaining such rights, to the end that ministerial officers can carry the judgment into execution without ascertainment of facts not therein stated." *Stewart v. USA Custom Paint & Body Shop, Inc.*, 870 S.W.2d 18, 20 (Tex. 1994) (holding that a document labeled as a dismissal order that did not include the party names or docket number was not a valid judgment because it was impossible to discern from its face whose rights were affected).

Without knowing Doe's name or identity, it was impossible for the trial court to render a judgment as to her TCPA motion that was sufficiently definite to have any practical legal effect. The trial court's attempt at a final judgment highlights why this is true. It is captioned as "Allison Publications, LLC, *Plaintiff*, v. Jane Doe, *Defendant*," and it contains no identifying or contact information for Doe. Additionally, it directs Allison to make all payments to a trust account held by Doe's attorney—who himself admits to not knowing Doe's name and cited at the motions hearing his "fiduciary duty" to Doe as the only mechanism available to ensure that payment of the final judgment award would make its way to Doe.

Thus, by its very terms, the trial court's judgment sought to protect Doe's identity from the entire world, which invariably precludes a ministerial officer or the trial court itself from effectuating the judgment. A ministerial officer tasked with execution would be unable to ascertain exactly whose rights it was seeking to protect.

18

*See Stewart*, 870 S.W.2d at 20; *see also* Tex. R. Civ. P. 629 (requiring all writs of execution to contain the "names of the parties in whose favor and against whom the judgment was rendered").

And, relatedly, the judgment's silence as to Doe's identity would render any future competent court incapable of parsing certain post-judgment matters. For instance, if an issue of res judicata arose, what would stop Doe—or another person claiming to be the true Jane Doe—from bringing a new action related to the same subject matter? *See Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007) (stating that res judicata bars a subsequent suit only if the identities of the parties to a previously adjudicated suit are established as the same as those in the subsequent suit). Or, how would a court navigate an application for a turnover order, a temporary restraining order to prevent the secreting of assets, or a writ of garnishment to impound Allison's nonexempt property? *See Gerjets v. Davila*, 116 S.W.3d 864, 867 (Tex. App.—Corpus Christi-Edinburg 2003, no pet.) (turnover order and TRO); *Patriot Residential Mgmt. Servs., LLC v. Wells Fargo Bank*, N.A., No. 02-12-00253-CV, 2013 WL 2338769 at *1 (Tex. App.—Fort Worth May 30, 2013, no pet.) (mem. op.) (turnover order and garnishment action). A future court looking to the trial court's final judgment devoid of Doe's identity could not reliably rule on any of these matters.

Tellingly, Doe agrees that her anonymity rendered the trial court impotent to enter a binding order *against* her, stating in her response to Allison's motion for identifying information that

> it is unclear what would be the purpose or effect of holding an anonymous defendant in contempt . . . . Indeed, issuance of a bench warrant calling for the arrest of "Jane Doe" would be quite a farce . . . . [And] it is again unclear what would be the purpose or effect of assessing a $50 fine against an anonymous defendant, or how the court would expect to collect $50 from "Jane Doe."

Thus, Doe seeks to have her anonymity and wield it, too. This runs afoul of the principle that a party not bound by a judgment is barred from asserting that another is bound by it, *Glover v. Donohoo*, 197 S.W.2d 531, 534 (Tex. App.—El Paso 1946, no writ), and the well-worn prohibition against the offensive use of certain privileges or immunities. *See, e.g., Ginsberg v. Fifth Ct. of Appeals*, 686 S.W.2d 105, 108 (Tex. 1985) ("A plaintiff cannot use one hand to seek affirmative relief in court and with the other lower an iron curtain of silence against otherwise pertinent and proper questions which may have a bearing upon his right to maintain his action.") (internal quotations omitted); *cf. Reata Const. Corp. v. City of Dall.*, 197 S.W.3d 371, 375–76 (Tex. 2006) ("[W]e believe it would be fundamentally unfair to allow a governmental entity to assert affirmative claims against a party while claiming it had immunity as to the party's claims against it.").

## V. CONCLUSION

For these reasons, we conclude that Doe did not allege sufficient facts for the trial court to make the threshold determinations regarding standing and mootness to establish subject matter jurisdiction. However, because this does not present an incurable defect, Doe should be given the opportunity to plead additional facts as necessary to establish that jurisdiction. *See C.L. Westbrook, Jr.*, 231 S.W.3d at 395.

Our resolution on jurisdictional grounds of Allison's first issue disposes of Allison's second and third issues and also Doe's second issue on cross-appeal.[9] *See* Tex. R. App. P. 47.1. Further, we pretermit consideration of Allison's fourth issue because its resolution would not alter the disposition of the appeal, and the issue may be rendered moot upon remand and further proceedings below. *See* Tex. R. App. P. 47.1; *Horn v. Hedgecoke Ins. Agency*, 836 S.W.2d 296, 299–300 (Tex. App.—Amarillo 1992, no pet.).

Accordingly, we reverse the trial court's final judgment and remand for further proceedings below, to include giving Doe the opportunity to provide any facts

---

[9]Doe's first issue on cross-appeal argues that the trial court erred by denying her Rule 91a motion. Because this motion also sought affirmative relief by way of a dismissal with prejudice and attorney's fees, our jurisdictional analysis applies equally thereto, and we thus overrule this issue. *See Rauhauser v. McGibney*, 508 S.W.3d 377, 381 (Tex. App.—Fort Worth 2014, no pet.), *overruled on other grounds by Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) ("The law is well-settled that a defendant's motion to dismiss that may afford more relief than nonsuit affords constitutes a claim for affirmative relief . . . .").

necessary to establish the court's jurisdiction to decide her TCPA motion.  *See* Tex. R.

App. P. 43.2(d), 43.3(a); *C.L. Westbrook, Jr.*, 231 S.W.3d at 395.

/s/ Brian Walker

Brian Walker
Justice

Delivered:  August 18, 2022