Clifton A. MOORE, Director of the Department of Business Regulation

v.

RHODE ISLAND SHARE AND DEPOSIT INDEMNITY CORP.

No. 84–189–Appeal.

Supreme Court of Rhode Island.

July 22, 1985.

Maura C. Travers, Susan D. Hayes, Dept. of Business Regulation, Providence, for plaintiff.

Vincent J. Santaniello, Manning West Santaniello & Pari, Providence, for defendant.

## OPINION

KELLEHER, Justice.

This controversy concerns the right of the Rhode Island Share and Deposit Indemnity Corp. (RISDIC) to insure the deposits of out-of-state financial institutions. The litigants are the Director of the Rhode Island Department of Business Regulation (director)[1] and RISDIC. A Superior Court justice rejected the director's request for a preliminary injunction and, in the declaratory-judgment facet of this controversy, ruled that RISDIC's charter did not bar it from insuring out-of-state deposits. Thereafter a final judgment was entered, and the director instituted this appeal.

The corporation was created on May 16, 1969, when the General Assembly, at its January 1969 session, enacted House Bill H–2037–A, entitled "An Act to Incorporate Rhode Island Share and Deposit Insurance Corporation."[2] Rhode Island Acts and Resolves 1427 (1969). The stated purpose for the 1969 legislation was the creation of a corporation that could provide "a fund for the insurance against loss of shares and deposits of members of credit unions." Through the years RISDIC's legislative charter has been amended several times.

Of particular interest is a charter amendment effectuated at the Legislature's Janu-

---

1. When this litigation was commenced on January 10, 1984, Thomas J. Caldarone, Jr., was director of the Department of Business Regulation. Sometime later he became a member of the Superior Court. William F. Carroll was then appointed as successor director. Later, Mr. Carroll was succeeded by Clifton A. Moore.

In due course Mr. Moore, through his attorney, filed a motion requesting that he be substituted as plaintiff. We have granted this request.

2. The corporate name was changed to Rhode Island Share and Deposit Indemnity Corp. on December 8, 1977.

ary 1976 session, in which RISDIC's powers were enlarged so that insurance against loss could be extended not only to members of a credit union but also to members of banks and other financial institutions. Section 2 of the charter, since the time of its passage, has provided that

"[e]xcept as otherwise herein provided, or where such laws would be in conflict with a provision of this act, the general laws of Rhode Island relating to business corporations (title 7, chapters 1 through 5) shall apply to the formation, powers, operation, and dissolution of said corporation and shall in all respects govern said corporation as if it had been formed under the general laws."

As a result of section 2, G.L. 1956 (1969 Reenactment) § 7–1.1–4(j) was incorporated by reference in RISDIC's charter. This subsection authorizes the corporation "[t]o conduct its business, carry on its operations, and have offices and exercise the powers granted by this chapter, within or without this state."

Later, in 1977, the charter was again amended so that RISDIC became specifically designated as a "domestic, non-profit corporation." Rhode Island's Non-profit Corporation Act, specifically, § 7–6–5(j), as enacted by P.L. 1984, ch. 380, § 1, allows a non-profit corporation to conduct its affairs both inside and outside the state.

The director's counsel maintains, first, that the Legislature, in creating RISDIC, intended that there be an entity that would maintain a strong commitment to the local banking community and ensure public confidence in the safety of the Rhode Island financial institutions it insured and, second, that the Legislature never intended that RISDIC would jeopardize these funds by permitting RISDIC to operate beyond the geographical boundaries of the State of Rhode Island. Consequently, the director's

counsel asks that we strictly construe the legislative grant against RISDIC and in favor of the public.

■ Recently, in *Fruit Growers Express Co. v. Norberg*, R.I., 471 A.2d 628 (1984), and also in *In re Dina N.*, R.I., 455 A.2d 318 (1983), we acknowledged that construction of statutes is a matter reserved for the courts, with this court serving as the final arbiter on questions of statutory construction. However, we also emphasized that when the language of a statute is clear and unambiguous and does not contradict an evident legislative purpose, there is no need for statutory construction or the use of interpretive aids. The statute must be applied literally by giving the words their ordinary and plain meaning. We once again believe that this principle applies to the controversy now before us.

■ It is obvious from what we have detailed in this opinion that there is nothing in the RISDIC charter or any statutory provision that would prohibit RISDIC from insuring deposits beyond the boundaries of Rhode Island. Clearly, had § 7–1.1–4(j) not been incorporated into its charter, RISDIC would still be entitled to rely on the statute allowing non-profit corporations to carry on their business within or beyond state borders.[3]

Here, there is nothing for us to construe. The clear language of the charter and the ensuing amendments make it clear that the director's appeal must fail.

However, we would point out that section 11 of RISDIC's charter specifically provides that the corporation, like the credit unions it serves, shall be subject to the supervisory powers of the director of Business Regulation that have been conferred upon the occupant of that office by the terms of G.L. 1956 (1982 Reenactment) § 19–23–13. This statute, in pertinent

---

**3.** In its brief RISDIC emphasizes that its change to a non-profit corporation was for the purpose of obtaining benefits under the Internal Revenue Code and points out that many non-profit corporations are formed for business purposes.

part, vests the director with authority to issue an order to RISDIC to show cause why its right to do business should not be suspended while the director determines whether RISDIC is conducting its business "in an unsafe, unauthorized, or dishonest manner." Any entity aggrieved by a resulting order of suspension may seek relief pursuant to the provisions of the Administrative Procedures Act, G.L. 1956 (1984 Reenactment) chapter 35 of title 42. However, at no time while RISDIC and Caldarone were at odds did the director attempt to invoke the powers set forth in § 19–23–13.

The director's appeal is denied and dismissed, and the judgment appealed from is affirmed.

SHEA, J., did not participate.