Ethelyn STEVENSON, Respondent,

v.

**MISSOURI PROPERTY INSURANCE PLACEMENT FACILITY, Appellant.**

No. WD 40795.

Missouri Court of Appeals,
Western District.

March 14, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 2, 1989.

Application to Transfer Denied
June 13, 1989.

Edward L. Smith, Kansas City, for appellant.

Charles A. Blackmar, Kansas City, for respondent.

Before MANFORD, P.J., and
TURNAGE and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

This breach of an insurance contract case was tried to the court. Stevenson, the insured, prevailed because the defendant, Missouri Property Insurance Placement Fa-

cility, as provided by the policy and state law, failed to give her written notice, as provided to the ruling and state law of nonrenewal of the fire insurance policy on her home. A loss resulted in $40,000 damage to the structure and $20,000 to the contents on Stevenson's home which was insured under the Missouri FAIR Plan as contained in §§ 379.810—.880, RSMo, 1986.

A brief discussion of the FAIR plan will precede the facts. FAIR is an acronym for fair access to insurance requirements. *Wells v. Missouri Property Insurance Placement Facility*, 653 S.W.2d 207, 208 note 2 (Mo. banc 1983). Our state law came after Congress in 1968 enacted the Urban Property Protection and Reinsurance Act, Pub.L. No. 90–448, §§ 1101–06, 82 Stat. 476, 555–67, which was designed to make insurance on property in urban areas more readily available. Section 379.810 of our state law, which passed in 1969, states the purpose of the law is to allow a scheme of insurance for property owners "who are in good faith entitled to but unable to procure such coverage through ordinary methods. Such program shall provide for an equitable distribution and placement of risks among all insurers ..." The scheme is to provide insurance on high risk property by spreading the risk among all insurers. *Wells, supra,* at 212. The subject of renewels under the FAIR plan is covered in § 379.845.2 which reads:

> Any notice of cancellation or notice of nonrenewal of a policy or binder issued under the program, together with a statement of the reason therefor, shall be sent to the insured and a copy retained by the facility. *Any* such *notice shall* be sent not less than *thirty days prior to* the cancellation or *nonrenewal of any risk* under the program *to allow ample time* for an application *for new coverage* to be made and a new policy to be written under the program. (Emphasis added.)

The litigants stipulated as to the facts. The plaintiff is a ninety-two year old widow. The house is located at 3419 Wyandotte in Kansas City. The appellant had issued her five previous fire policies under the FAIR plan, the last one renewed in 1983 carrying coverage of $40,000 for the building and $20,000 for the contents, was to carry through for a year until September 7, 1984. It was admitted no renewal notice was ever sent by the appellant, and she did nothing. On December 2, 1985 the loss occurred. The renewal portion of the policy read:

> 18. **Non–Renewal.** We may elect not to renew this policy. We may do so by delivery to you or mailing to you at your mailing address shown in the Declarations, written notice *at least 30 days before the expiration date of this policy.* Proof of mailing shall be sufficient proof of notice. (Emphasis added.)

The appellant responded by letter to Stevenson's claim that it did not have to comply with Condition 18 because the policy simply *expired,* the company had made no attempt to cancel it or advise the policyholder of nonrenewal. The letter went on to say that while the defendant does not advise a policyholder of an up and coming expiration, it does advise the policyholder's broker ninety days in advance. "It is then the responsibility of the broker to pursue a renewal with his client and the submission of a renewal application to this office. Not having received a renewal application prior to or after the September 7, 1984 expiration, we had to assume that the policyholder did not wish to renew their coverage." The tack of the appellant on appeal has been in the same vein, that Stevenson or her broker should have caught the fact that no renewal notice was sent and no premium was paid, with the result that the policy simply expired making the renewal portions of the policy and the law became inapplicable. The essence of the company's argument is because the company did not make a determination not to renew (a nondecision) it did not have to comply with § 379.845.2.

This court rejects the appellant's reasoning and argument. To do as the appellant suggests would be to emasculate the specific provisions and the very spirit of this FAIR plan and this insurance contract, and that is to put the burden on the company to notify the homeowner far enough in advance (a minimum of 30 days) to begin looking for other coverage to avoid a lapse.

The statute and the policy on the subject of renewals state in no uncertain terms, and in mandatory language, the written 30 day notice must be given. It was not given here. The case of *Waynesville Security Bank v. Stuyvesant Ins. Co.*, 499 S.W.2d 218 (Mo.App.1973), offers no help to the appellant. That case involved the expiration of a policy without a notice, but did not involve a policy under the FAIR plan, so does it not control here. There was no language in that policy or the applicable insurance laws requiring notice of nonrenewal. *Id.* at 221. The following language from that opinion is worth noting:

> We are aware that in some jurisdictions, statutes have been enacted which contemplate special consideration of the interests of property owners who are exposed to high degree of risk but are unable to obtain fire insurance through ordinary channels. Thus, it may be that fire insurance policies issued under the so-called FAIR plans require notice of nonrenewal, so the insured may have the opportunity to obtain protection elsewhere. See 12 U.S.C.A. § 1749bbb–3(b)(9), and § 379.845, para. 2, RSMo 1969 V.A.M.S.

*Id.*

■ The renewal clause of this insurance contract is clear, the reasonable expectations and intent of the parties is clear, notice of the policy not being renewed is required, and this court's interpretation can be no different. *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.*, 594 S.W.2d 950, 952–53 (Mo.App.1980); *Hester v. Am. Family Mut. Ins. Co.*, 733 S.W.2d 1, 2 (Mo.App.1987). Without written notice of nonrenewal, the policy did not expire or cease. *Torrez v. State Farm Mut. Auto. Ins. Co.*, 130 Ariz. 223, 635 P.2d 511 (Ct.App.1981); *B.L. Roberts v. Am. S. Ins. Co.*, 142 Ga.App. 232, 235 S.E.2d 660, 661 (1977).

The court realizes some fifteen months passed from the end date shown on the last renewal until the date of loss. In *Newman v. Cambridge Mut. Fire Ins. Co.*, 476 A.2d 113 (R.I.1984), the Supreme Court of Rhode Island was confronted by a similar situation. In that case, a policy holder brought suit to recover fire insurance proceeds for a fire which occurred after her policy expired. The facts were as follows: On November 8, 1967, Cambridge issued a policy of fire insurance to Newman on a structure for a three-year period ending on November 8, 1970. "The total premium was $75, which was paid by Ida Newman in three equal annual installments. The final payment was made November 3, 1969. The policy was issued through the Ray Flint Agency. Thereafter, Stone Mill purchased the Flint Agency and entered into a limited-agency agreement with Cambridge. It is undisputed that Stone Mill did not have the authority to renew policies or write new policies on behalf of Cambridge but only to service existing policies ... Neither Cambridge nor Stone Mill sent notice to Newman of the impending expiration of the policy, nor did either notify her that the policy would not be renewed. By its terms, this policy expired November 8, 1970. No further premium was paid. On April 30, 1971 the property was damaged by fire ..." *Id.* at 115.

The court determined that Rhode Island's General Assembly enacted a statute which was designed to dovetail with the provisions of the federal FAIR Plan Act in order to accomplish the objective of making insurance available to cover parties that might otherwise not be insurable. A duty was upon insurance companies that issued policies under the FAIR Plan to give notice to a policyholder "a reasonable time prior to the cancellation or nonrenewal of any risk eligible under the plan...." *Id.* at 117 (quoting 12 U.S.C.A. § 1749bbb–3(b)(9)).

> It is in that context that the court wrote:
> When Cambridge determined not to renew plaintiff's policy of insurance, a duty arose in accordance with statutory requirements to notify the policyholder directly of said determination. No notice was given, and consequently, plaintiff did not take steps to provide herself with substitute insurance. This failure proximately resulted in the property's not being insured with another company at the time of the loss on April 30, 1971. As a result of the statutory policy enacted by the Congress in 1968 and implemented in

respect to the State of Rhode Island in 1969, we believe that this lack of notice renders Cambridge liable under its policy as it would have been had said policy been renewed.

*Id.* at 118. *See also Bankers & Shippers Ins. v. Meridian Naval,* 431 So.2d 1123 (Miss.1983); *Ins. Co. of North America v. Rall,* 360 Pa.Super. 374, 520 A.2d 506 (1987); *Aegis Sec. Ins. Co. v. Com., Ins. Dept.,* 84 Pa.Cmwlth.Ct. 163, 478 A.2d 944 (1984).

■ While Missouri's legislation is not a rescript of the federal act, the Missouri FAIR Plan language as contained in Stevenson's fire policy, leads this court to the conclusion that Stevenson is entitled to recover under her policy because she was not notified that it was not going to be renewed. The statute is clear on its face—"notice of cancellation or notice of nonrenewal of a policy or binder issued under the program, together with a statement of the reasons therefor, shall be sent to the insured ..." § 379.845(2). Even had there been no statute, the policy language created the same obligation. *Bankers,* 431 So.2d at 1126.

The judgment is affirmed.