Maurice C. PARADIS, as Receiver for
Heritage Loan & Investment
Company, Plaintiff,

v.

AETNA CASUALTY & SURETY
COMPANY, Defendant.

Civ. A. No. 91–0606L.

United States District Court,
D. Rhode Island.

Aug. 18, 1992.

Steven E. Snow, Randall L. Souza, Partridge, Snow & Hahn, Providence, R.I., for plaintiff.

William T. Bogaert, Morrison, Mahoney & Miller, Boston, Mass., Stephen Harten, Morrison, Mahoney & Miller, Providence, R.I., for defendant.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This matter is presently before the Court on defendant's motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). The action arises out of the plaintiff's attempt to recover on a fidelity bond issued to Heritage Loan and Investment Co. ("Heritage") by defendant Aetna Casualty & Surety Co. ("Aetna"). Heritage is an insolvent loan and investment company incorporated under the laws of Rhode Island with its principal place of business in Providence. Aetna is incorporated under the laws of Connecticut with its principal place of business in Hartford. Jurisdiction in this Court is founded upon diversity of citizenship pursuant to 28 U.S.C. § 1332. For the reasons that follow, Aetna's motion to dismiss is denied.

## I. BACKGROUND

On January 22, 1969, Aetna issued a "Small Loan Companies Blanket Bond" to Heritage's predecessor to insure against loss from dishonest or fraudulent acts of its employees. The bond continued in effect when the insured became Heritage Loan and Investment Company on January 22, 1978. Section 3 of the bond specifies:

There shall be no liability under this bond on account of any loss unless discovered by the Insured prior to the expiration of twelve months from the cancelation of this bond as an entirety, as provided in Section 10....

Section 10 states in pertinent part:

This bond shall be deemed canceled as an entirety—(a) thirty days after the receipt by the Insured of a written notice from the Underwriter of its desire to cancel this bond, or ... (c) immediately upon the taking over of the Insured by a receiver.

On February 24, 1988, Aetna sent a cancellation notice to Heritage pursuant to § 10(a) of the bond, informing Heritage that the bond would be terminated effective March 28, 1988. Neither Aetna nor Heritage informed the Rhode Island Department of Business Regulation ("DBR") that Aetna had cancelled the bond.

On November 18, 1990, the Superior Court of Providence County ordered Heritage closed, placing the institution into receivership and appointing the director of the DBR as receiver. On December 20, 1990, after examining Heritage's records, the Receiver notified Aetna of its potential claim under the bond. Further investigation revealed that the president and chief executive officer of Heritage, Joseph Mollicone, Jr., had embezzled approximately $13 million, causing severe economic injury to Heritage's depositors and to all of Rhode Island.

The Receiver subsequently filed a claim for $13 million on behalf of Heritage. Aetna denied the claim but stated that it would consider a resubmission with additional documentation. Thereupon, the Receiver submitted a second proof of loss for $5.9 million. When Aetna failed to approve or deny the second claim, the Receiver filed this complaint on behalf of Heritage, alleging that Aetna had breached its contractual duty under the bond and had refused in

bad faith to pay the claim, in contravention of R.I.Gen. Laws § 9–1–33 (1985 Reenactment).

Aetna now moves to dismiss the complaint for failure to state a claim. As grounds for its motion, Aetna contends that the bond was validly terminated on March 28, 1988, but that no loss was discovered or reported until after November 18, 1990, when the Receiver took over. Therefore, Heritage failed to file its claim with Aetna within twelve months of bond termination, as required by § 3 of the bond. The Receiver argues, however, that the bond was not validly terminated on March 28, 1988, because the DBR was never notified of the cancellation, as required by statute. The issue before the Court is whether Aetna's cancellation of the bond in 1988 without notice to the DBR was effective to commence the twelve-month discovery period. After hearing arguments on the motion, the Court took the matter under advisement. The motion is now in order for decision.

## II. DISCUSSION

The standard for deciding a motion to dismiss pursuant to Rule 12(b)(6) is clear. The Court must view all facts and inferences in the light most favorable to the plaintiff and must assume for the purposes of the motion that all of the allegations in the complaint are true. *Lopez v. Bulova Watch Co.*, 582 F.Supp. 755, 767 (D.R.I. 1984). "Only if it appears beyond doubt from the pleadings that the party opposing the motion can prove no set of facts which would support the claim for relief may the court grant the motion to dismiss." *Id.*

■ Section 19–5–23 of the General Laws of Rhode Island, as previously enacted, states in pertinent part:

As a condition of employment, every treasurer, assistant treasurer, officer, manager, or assistant manager of a ... loan and investment company ... shall be bonded in such form and in such amount as the director of business regulation may prescribe, for the honest discharge of his or her duties, and shall file with the director of business regulation an attested copy thereof.... The director of business regulation shall be notified of any change in the bond thereafter made, or any revocation of the bond within ten (10) business days of such a change or revocation by the responsible officer of the ... loan and investment company.... In the event that the director of business regulation is not provided with the attested copy and certificate of custodian of such a bond, or notice of a change therein or a revocation of such a bond ... then the institution ... shall be fined ... [and] ... shall be liable to a daily penalty.... *Said bond or bonds shall be continuous and remain in full force and effect until termination by either the institution or the surety. Such termination shall not become effective until thirty (30) days after the director of business regulation has received notice thereof. Regardless of the number of years, the bond shall continue in force....*

R.I.Gen.Laws § 19–5–23, as amended by P.L.1985, ch. 465, § 1 (emphasis added). The legislative purpose behind § 19–5–23 is to protect depositors of banks and other financial institutions in Rhode Island from defalcation by employees and officers of the institutions. The statute contemplates that the DBR shall be kept fully informed of any changes in the bond. Failure to so inform the DBR results in fines and daily penalties imposed upon the institution. The statute also makes clear that the bond is to remain in full force and effect until validly terminated, and that the DBR must have notice before any termination becomes effective. It is undisputed that the DBR was never so informed in this case.

Aetna argues that the fines and penalties imposed upon an institution indicate a legislative intent to obligate Heritage to keep the DBR informed. Therefore, Heritage's failure to perform its duty should not invalidate Aetna's effective cancellation of the bond. Clearly, the fines and penalties provide an incentive for the institution to keep the DBR properly informed. Nevertheless, this is not a question of negligence but

simply one of statutory interpretation, and according to Rhode Island law:

> when the language of a statute is clear and unambiguous and does not contradict an evident legislative purpose, there is no need for statutory construction or the use of interpretive aids. The statute must be applied literally by giving the words their ordinary and plain meaning.

*Moore v. Rhode Island Share & Deposit Indem. Corp.*, 495 A.2d 1003, 1004 (R.I. 1985). Regardless of any negligence issue, therefore, nothing can alter the statutory mandate that "termination shall not become effective until thirty (30) days after the director of business regulation has received notice thereof." R.I.Gen.Laws § 19–5–23.

Although Aetna validly followed the terms of the bond in notifying Heritage of the cancellation, those terms were subject to state law requiring notice to the DBR. *See Luso–American Credit Union v. Cumis Ins. Soc'y*, 616 F.Supp. 846, 849 (D.Mass.1985) (one-year period of limitations specified by fidelity bond was invalid in light of Massachusetts law permitting two-year statute of limitations). Accordingly, the Court concludes that Aetna's cancellation of the bond in 1988 did not effectively terminate coverage because the DBR was never notified. The bond remained in effect until the Receiver took over, pursuant to § 10(c) of the bond, and the Receiver for Heritage properly filed the claim within the twelve-month period that commenced on November 18, 1990.

■ Aetna next asserts that § 19–5–23 should not apply to this bond, which was already in effect at the time of the statute's enactment in 1984, because retroactive application would impair the contractual obligations of the parties under the bond. The Court finds this argument unpersuasive. Whereas statutes are generally given prospective application, a remedial or procedural statute that neither affects substantive rights nor impairs contractual obligations may apply retroactively, absent a legislative intent to the contrary. *Wayland Health Ctr. v. Lowe*, 475 A.2d 1037, 1041 (R.I.1984); *Fox v. Fox*, 115 R.I. 593, 596–97, 350 A.2d 602, 604 (1976).

In *Newman v. Cambridge Mut. Fire Ins. Co.*, 476 A.2d 113 (R.I.1984), an insurance company had failed to notify a policyholder that her policy had not been renewed, contrary to state law. The court found that the statutory requirement of notifying the policyholder did not impermissibly impair the contractual obligations of the parties. *Id.* at 117–18. "[M]inor modification of an obligation to provide reasonable notice of nonrenewal of an insurance policy would constitute no impairment of a contract in the constitutional sense, based either upon state or federal constitutional provision." *Id.* at 118; *see also City of El Paso v. Simmons*, 379 U.S. 497, 508, 85 S.Ct. 577, 583, 13 L.Ed.2d 446 (1965) (state's economic interests and sovereign right to protect general welfare may justify legislation that modifies existing contracts). Therefore, this Court concludes that the statutory provision requiring that the DBR be notified as a prerequisite to effective bond termination does not affect substantive rights nor impair the pre-existing contractual obligations of the parties.

Furthermore, if the statute were applied only to bonds issued after its enactment an absurd situation would result. Pre-existing bonds could be renewed indefinitely without ever being made subject to the statute's provisions, in clear derogation of the legislative purpose to protect depositors from defalcation. In furtherance of that purpose, the statute contemplates that the DBR shall be notified of changes in all fidelity bonds, including those bonds previously issued. Accordingly, the Court concludes that § 19–5–23 applies to the bond in question.

■ Even if Aetna had effectively terminated the bond in 1988, the present situation would call for equitable tolling of the twelve-month discovery period until November 18, 1990, when the Receiver took over. Equitable tolling delays the running of the discovery period where there has been such adverse domination and control of the institution by the defrauding employees that the institution did not have the

capacity to discover or report the malfeasance. *See Kehoe v. Peerless Ins. Co.*, Fed.Sec.L.Rep. (CCH) ¶ 97,583 at 98,092, 1980 WL 1425 (D.Mass. June 20, 1980); *Admiralty Fund v. Peerless Ins. Co.*, 143 Cal.App.3d 379, 388–90, 191 Cal.Rptr. 753, 758–60 (1983); *accord California Union Ins. Co. v. American Diversified Sav. Bank*, 948 F.2d 556, 565 (9th Cir.1991) (equitable tolling exception unwarranted by facts); *J.I. Corp. v. Federal Ins. Co.*, 730 F.Supp. 1187, 1189–90 (D.Mass.) (no adverse domination and control by wrongdoers to justify abrogation of discovery provisions), *aff'd* 920 F.2d 118 (1st Cir. 1990).

In his complaint the Receiver of Heritage asserts that Mollicone's influence as president and chief executive officer of Heritage amounted to such adverse domination and control. This is a question of fact, but for the purpose of this motion, the Court shall accept as true the facts as alleged by the Receiver. Therefore, the Court finds that equitable tolling could be warranted in this case, and thus the plaintiff has stated a cause of action.

### III.  CONCLUSION AND ORDER

Accordingly, defendant's motion to dismiss the complaint is hereby denied.

It is so ordered.