Lisa F. LIEBERMAN–SACK, D.M.D.

v.

HARVARD COMMUNITY HEALTH PLAN OF NEW ENGLAND, INC. and Leon G. Danish, D.D.S.

Civ. A. No. 93–160L.

United States District Court, D. Rhode Island.

April 11, 1995.

Marc Gursky, Providence, RI, for plaintiff.

Kelly Sheridan, Providence, RI, for defendants.

### MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.

This matter is before the Court on three motions filed by defendants Harvard Community Health Plan of New England, Inc. ("HCHP–NE") and Leon G. Danish, D.D.S. ("Danish"). First, defendants move to dismiss plaintiff's claim for compensatory and punitive damages and expert witness fees under the 1991 amendments to Title VII, 42 U.S.C. § 2000e *et seq.* ("Title VII/1991 Civil Rights Act"). Second, defendants move for partial summary judgment as to plaintiff's claim for compensatory damages under the Rhode Island Fair Employment Practices Act, R.I.G.L. § 28–5–1 *et seq.* ("FEPA"). Finally, defendants move to strike plaintiff's demand for a jury trial or, in the alternative, to dismiss without prejudice or sever plaintiff's claims brought under FEPA. For the following reasons, defendants' motions are granted in part and denied in part.

### I. Facts

Plaintiff Lisa F. Lieberman–Sack, D.M.D. ("Lieberman–Sack") is a dentist formerly employed by Rhode Island Group Health Association ("RIGHA"), now known as

HCHP–NE. Plaintiff commenced practice with RIGHA in December, 1986. She was hired as an independent contractor, was paid on an hourly basis, and received no benefits. In April, 1987, plaintiff was made a part-time employee of RIGHA, and she agreed to work three days per week, as well as to be on-call and to work occasional weekend days.

Plaintiff worked for RIGHA until July 2, 1991, when she was terminated by defendant Danish. Danish was the Chief of the RIGHA Dental Department. Plaintiff claims that Danish stated that he was terminating her because she had refused to treat HIV-positive patients. Plaintiff denies that allegation. Plaintiff claims that Danish's stated reason for her dismissal was pretextual and that she was really terminated for discriminatory reasons, i.e., because of her gender and/or religion.

The complaint alleges that during the time that plaintiff worked for RIGHA and HCHP–NE that she was treated "less favorably than similarly situated male and non-Jewish co-workers." Complaint ¶ 14. She claims that she was given inferior working facilities and equipment, inadequate assistance, and inconvenient patient schedules. Plaintiff also claims that she was held to stricter attendance schedules and that she did not receive annual evaluations. She attributes all these disparities to the fact that "she was a female dentist raising a family, working part time...." Complaint ¶ 14. Plaintiff notes that she temporarily left work in 1988 to give birth to a son, Jordan, and that when she was terminated in 1991, she had informed her employer that she was expecting a second child.

Plaintiff brings this action to challenge the conduct of defendants during the time that she was employed. Plaintiff has two employment discrimination claims, both of which proceed under "disparate treatment" theories. First, plaintiff alleges that the defendants violated Title VII/1991 Civil Rights Act, discharging and otherwise discriminating against her with respect to her compensation, terms, conditions, or privileges of employment because of her gender and/or religion. Second, plaintiff seeks recovery for the same alleged discriminatory treatment under FEPA, the state law analogue to Title VII. Plaintiff appropriately followed administrative procedures before filing this action.

## II. Analysis

Defendants' two dispositive motions address the question of what damages are available to plaintiff if she proves the two causes of action alleged. Defendants' motion to dismiss challenges plaintiff's claim for compensatory and punitive damages under federal law, and defendants' motion for partial summary judgment contests plaintiff's claim for compensatory damages under state law.

### A. Defendants' Motion to Dismiss

 Defendants move to dismiss plaintiff's claims for compensatory and punitive damages under the 1991 Civil Rights Act.[1] In ruling on a motion to dismiss under Rule 12(b)(6), this Court must take the allegations of the complaint as true and view them in the light most favorable to the plaintiff. *Brower v. County of Inyo,* 489 U.S. 593, 598, 109 S.Ct. 1378, 1382, 103 L.Ed.2d 628 (1989); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355

---

1. The 1991 Civil Rights Act allows a plaintiff in a disparate treatment case to recover compensatory and punitive damages when discrimination by an employer is intentional. Section 102(a) of the statute reads:

In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–5) against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) prohibited under section 703, 704, or 717 of the Act (42 U.S.C. 2000e–2 or 2000e–3), and provided that the complaining party cannot recover under section 1977 of the Revised Statutes (42 U.S.C.1981), the complaining party may recover compensatory and punitive damages ... in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.

Pub.L. No. 102–166, 105 Stat. 1071 (1991).

U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Paradis v. Aetna Casualty & Sur. Co.*, 796 F.Supp. 59, 61 (D.R.I.1992); *Lopez v. Bulova Watch Co.*, 582 F.Supp. 755, 767 (D.R.I.1984). In this case, defendants bear the burden of establishing that the claims of the plaintiff are insufficient as a matter of law. *National Credit Union Admin. Bd. v. Regine*, 795 F.Supp. 59, 62 (D.R.I.1992) (citing *Harper v. Cserr*, 544 F.2d 1121, 1122 (1st Cir.1976)).

■ Defendants' motion to dismiss under Rule 12(b)(6), dated July 8, 1994, is a renewal of a motion to dismiss filed in this action on August 23, 1993. Defendants renewed their motion after this Court had stayed the litigation, pending the outcome of *Landgraf v. USI Film Products*, —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). The stay was entered because the question at issue in *Landgraf*—whether the 1991 Civil Rights Act could be retroactively applied—was dispositive of defendants' motion to dismiss. Plaintiff had relied on the retroactive application of the 1991 Civil Rights Act as a basis for her federal claims for compensatory and punitive damages.

In *Landgraf*, the Supreme Court held that the provisions of the 1991 Civil Rights Act creating a right to recover compensatory and punitive damages for certain violations of Title VII did not apply to pending cases. In other words, the Court held that the 1991 Civil Rights Act is not retroactive. The Court's unequivocal holding is fatal to plaintiff's claim for compensatory and punitive damages in this case under federal law. Since the 1991 Civil Rights Act took effect on November 21, 1991, *see* Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071 (1991), and plaintiff complains of conduct that occurred on or before July 2, 1991, plaintiff may not rely on the 1991 Civil Rights Act as a basis for her claim for compensatory and punitive damages. Plaintiff's claim accrued before the 1991 Civil Rights Act became law.

Since plaintiff has no legal foundation upon which to base her claims for compensatory or punitive damages under Title VII/1991 Civil Rights Act, defendants' motion to dismiss these claims must be granted.

**B. Defendants' Motion for Partial Summary Judgment**

■ Defendants also move for partial summary judgment under Rule 56 as to plaintiff's claim for compensatory damages brought under FEPA. By invoking Rule 56, the moving party effectively declares that the evidence is insufficient to support the non-moving party's case. *U.S. v. One Parcel of Real Property with Bldgs., Appurtenances, and Improvements, Known as Plat. 20, Lot 17, Great Harbor Neck, New Shoreham, R.I.*, 960 F.2d 200, 204 (1st Cir.1992). Summary judgment is granted when "there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This Court must examine the record in the light most favorable to the nonmoving party and indulge all reasonable inferences in that party's favor in deciding this motion. *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994).

Defendants contend that they are entitled to judgment as a matter of law because plaintiff's claim for compensatory damages is rooted in an unconstitutional amendment to FEPA, enacted by the Rhode Island General Assembly in 1992. The 1992 amendment to FEPA stated that "[t]he complainant shall not be required to prove that he or she has suffered physical harm or physical manifestation of injury in order to be awarded compensatory damages." 1992 Pub.L. ch. 447 ("1992 Amendment"). The 1992 Amendment also stated that it "shall take effect upon passage and apply to all pending cases." 1992 Pub.L. ch. 447, § 2. Defendants contend that the 1992 Amendment to FEPA creates new law and that it retroactively impairs defendants' rights.

■ The threshold question that faces this Court is whether the 1992 Amendment to FEPA is new law or is simply declaratory of existent law. If the 1992 Amendment creates new law, then this Court must analyze whether the retroactive application of the new law offends principles of due process, since the statute explicitly applies to all pending cases. *General Motors Corp. v. Romein*, 503 U.S. 181, 112 S.Ct. 1105, 117

L.Ed.2d 328 (1992); *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984). If, however, the amendment is declaratory of existent law, then this Court need not perform a due process evaluation of its retroactivity.

■ It is well-settled that a federal court must defer to the highest court of the state as the arbiter of state law. *Martin v. Lincoln Bar, Inc.*, 622 A.2d 464 (R.I.1993); *Donahue v. Rhode Island Dep't of Mental Health*, 632 F.Supp. 1456, 1478 (D.R.I.1986). However, the Rhode Island Supreme Court has not clarified whether or not the 1992 Amendment to FEPA creates new law or restates existing law. Neither have any of the lower state courts in Rhode Island published any opinions on this subject. Thus, where the state's highest court has not interpreted the rule or statute in question, the federal court may attempt to predict how the state's highest court would rule on the issue in a pending federal case. *Ryan v. Royal Ins. Co. of America*, 916 F.2d 731, 739 (1st Cir.1990). Of course, in Rhode Island, if a federal court has no guidance from state law or "better reasoned authorities," *Ryan*, 916 F.2d at 739, the court may certify a question to the Rhode Island Supreme Court. *See* Rule 6, R.I. Supreme Court Rules of Appellate Procedure.

■ In this case, however, the Rhode Island Supreme Court has not left this Court without guidance. The Rhode Island Supreme Court has explicitly held that trial courts hearing causes of action brought under FEPA should look for guidance from federal courts that have construed Title VII. *Newport Shipyard, Inc. v. Rhode Island Comm. for Human Rights*, 484 A.2d 893 (R.I.1984); *Narragansett Elec. Co. v. Rhode Island Comm. for Human Rights*, 118 R.I. 457, 374 A.2d 1022 (1977). This Court has noted the near identity of Title VII to FEPA in the past. *See, e.g., Marley v. United Parcel Service*, 665 F.Supp. 119 (D.R.I.1987). Moreover, these statutes, FEPA and Title VII, have been amended in similar ways. Both statutes now allow for the recovery of compensatory and punitive damages in the case of intentional discrimination.[2] Therefore, this Court concludes that Title VII jurisprudence is relevant to the interpretation of FEPA.

■ Defendants urge this Court to recognize that the 1992 Amendment to FEPA creates new law, since it relieved plaintiff of the burden of proving a physical manifestation of injury. As support for their argument, defendants rely on *Reilly v. U.S.*, 547 A.2d 894 (R.I.1988). In that case, the Rhode Island Supreme Court held that a plaintiff must prove physical symptomology in order to recover damages for mental anguish under the tort of negligent infliction of emotional distress. Also in a footnote, *id.* at 899 n. 3, the Court stated that a plaintiff must prove physical symptomology in order to recover damages for mental anguish in a claim for intentional infliction of emotional distress. *See Curtis v. R.I. Dept. of Children and Their Families*, 522 A.2d 203 (R.I.1987). Defendants offer this case to prove that plaintiff, before the 1992 Amendment to FEPA, would have had to prove physical symptomology in order to recover damages under FEPA, as her claim seeks compensatory damages for mental anguish and emotional distress.

This Court disagrees. While defendants' argument makes a clever analogy to tort law, defendants' argument presents a novel interpretation of FEPA, one that is unsupported by relevant case law. At no time, in any case, has either Title VII/1991 Civil Rights Act or FEPA been interpreted to require that a plaintiff prove physical symptomology to recover compensatory damages. Physical manifestations of injury have always been irrelevant to the prima facie burden placed upon an employment discrimination plaintiff.

The case law upon which defendants rely is generated from the common law of torts, and the common law of torts exists independently of the statutory law of employment discrimination in Rhode Island. Had the Rhode Island legislature meant to incorporate the common law of torts as an interpretive mech-

---

**2.** FEPA was so amended on June 17, 1991, 1991 Pub.L.Ch. 135, 343, and Title VII was so amended on November 17, 1991, Pub.L. No. 102, 166, § 102.

anism for FEPA, it could have done so in the statute. The statute is silent on that subject. If the Rhode Island Supreme Court had found the common law of torts relevant to the interpretation of FEPA, it could have so stated. But it has not, and neither has any other court. Therefore, this Court declines the invitation to import common law tort concepts into the interpretation of FEPA.

This Court concludes that the 1992 Amendment to FEPA, stating that "[t]he complainant shall not be required to prove that he or she has suffered physical harm ... or ... manifestation of injury," does *not* create new law. Rather, this Court finds that the amendment was adopted by the Rhode Island General Assembly to clarify existent law. Since the 1992 Amendment was simply declaratory of existing law, it cannot be regarded as retroactive. Therefore, the Court can deny defendants' motion for partial summary judgment on this ground alone.

■ There is, however, an additional and perhaps more potent reason to deny defendants' motion for partial summary judgment. Assuming *arguendo* that the 1992 Amendment to FEPA *did* create new law, defendants still have the burden of proving that a retroactive application of that law would unconstitutionally deny them due process. Defendants cannot do that in this case.

The test for determining the constitutionality of retroactive legislation was articulated by the Supreme Court in *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984). In that case, the Supreme Court held that retroactive legislation is constitutional so long as the legislation effects a legitimate legislative purpose furthered by rational means. *Id.* at 730, 104 S.Ct. at 2718. *See General Motors Corp. v. Romein,* 503 U.S. 181, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992). While the Court has stated that "[r]etroactive legislation presents problems of unfairness that are more serious than those posed by prospective legislation, because it can deprive citizens of legitimate expectations and upset settled transactions," *Romein,* 503 U.S. at 191, 112 S.Ct. at 1112, the Court has also noted that it is "clear that legislation read-

justing rights and burdens is not unlawful solely because it upsets otherwise settled expectations." *Pension Benefit Guaranty,* 467 U.S. at 729, 104 S.Ct. at 2718 (citations omitted).

Defendants argue that the 1992 Amendment to FEPA denies them due process because "an employer such as HCHP–NE could not expect in 1991 that its discharge of an employee would result in a compensatory damage claim under FEPA when the employee suffered no physical manifestation of injury." Defendants' Motion for Partial Summary Judgment, at 5. The Amendment is also unconstitutional, defendants argue, because it "deprives them of a defense that would otherwise be dispositive of this action." *Id.,* at 4.

The core of defendants' argument is that the legislation is unconstitutional because it changed their expectations about the extent of their liability in this case. However, this reason alone is an insufficient basis to strike down the law as unconstitutional. Indeed, defendants' argument is framed in precisely the terms adumbrated by the Supreme Court when it held that "readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations." *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 729, 104 S.Ct. 2709, 2718, 81 L.Ed.2d 601 (1984) (citations omitted). Defendants are bound to show that the 1992 Amendment to FEPA lacked a legitimate legislative purpose, but the only one they offer is that it disturbed their expectations. Such an argument fails to demonstrate unconstitutionality under *Pension Benefit Guaranty.*

There are two reasons why the 1992 Amendment to FEPA is not unconstitutionally retroactive. First, and most important, the 1992 Amendment to FEPA does have a legitimate legislative purpose as required by *Pension Benefit Guaranty* and *Romein,* and therefore meets the test of due process articulated by the Supreme Court. The 1992 Amendment was enacted to clarify the burden of proof of damages placed on plaintiff in an employment discrimination case. Second, the 1992 Amendment to FEPA *did not* make a change in the law and, therefore, could not

have disturbed defendants' reasonable expectations. Any claim that the 1992 Amendment was a change in the law necessarily departs from the large body of employment discrimination law which has never required a plaintiff to prove physical manifestations in order to recover compensatory damages. Defendants have failed to provide the Court with a single employment law case in which plaintiff was required to prove physical manifestations upon which defendants could have reasonably relied as stating pre–1992 Amendment law.

■ Defendants' argument regarding constitutionality is also weakened by the fact that the 1992 Amendment to FEPA pertains to damages, and not to liability. When a legislature effects a retroactive change in the law of damages and not in the law of liability, due process concerns are not as compelling. In this case, the 1992 Amendment to FEPA does not make defendants liable for conduct that was formerly legal; it merely expands, to some degree, the consequences flowing from defendants' illegal conduct. Moreover, since the 1992 Amendment conditions the recovery of compensatory damages on the *plaintiff's physical reaction to the discrimination* and not on the actions which defendants took, defendants cannot logically argue that their behavior would have been different had the 1992 Amendment been in effect at the time of the alleged offending action. To do so would require defendants to argue that since they did not expect plaintiff to have any physical manifestations resulting from intentional discrimination, they intentionally discriminated against her; but had defendants known that plaintiff could recover without physical manifestations, they would not have intentionally discriminated against her. Such an approach is contrary to the purposes to be achieved by FEPA, and this Court finds no reason to credit such a view.

The 1992 Amendment to FEPA clearly has a legitimate purpose: it serves to clarify what plaintiff has to prove in order to recover compensatory damages in an employment discrimination case. Moreover, since the 1992 Amendment followed closely on the heels of the 1991 Amendment allowing compensatory damages, it was clearly designed to apply to all cases brought under the 1991 Amendment before they went to trial.

Therefore, this Court concludes that even if the 1992 Amendment to FEPA did create new law, the retroactive application of this new law does not offend principles of due process. The 1992 Amendment clearly has a legitimate legislative purpose, and the purpose is achieved by a rational legislative means. The 1992 Amendment therefore meets the requirements of due process under the Fourteenth Amendment and is applicable to this case.

Consequently, defendants' motion for partial summary judgment as to plaintiff's claim for compensatory damages under FEPA is denied.

## C. Defendants' Motions to Strike Plaintiff's Claim for a Jury Trial

Having decided defendants' dispositive motions, this Court will now consider defendants' motion to strike plaintiff's claim for a jury trial or, in the alternative, to sever or dismiss without prejudice plaintiff's pendent claim under FEPA ("motion to sever or dismiss"). Defendants have petitioned this Court to renew their motion to sever or dismiss in the event that their motion for partial summary judgment on plaintiff's state law claims was denied. Thus, defendants' motion to strike jury demand and defendants' motion to sever or dismiss are all before this Court for decision.

■ In federal court, a plaintiff is entitled to a jury trial on claims for damages at law. *Taylor v. State of R.I. Dept. of Mental Health, Retardation and Hospitals,* 736 F.Supp. 15, 18 (D.R.I.1990); *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 563, 110 S.Ct. 1339, 1344, 108 L.Ed.2d 519 (1990); *Lytle v. Household Mfg., Inc.,* 494 U.S. 545, 548–50, 110 S.Ct. 1331, 1335, 108 L.Ed.2d 504 (1990). The Constitution of the United States provides this right to a jury trial in "suits at common law." U.S. Const. Amend. VII. Yet, where the remedies being sought are of an equitable nature only, a plaintiff has no right to a jury trial. *Noviello v. State of R.I. Dept. of Mental Health,* 142 F.R.D. 581

(D.R.I.1991) (citing *Tull v. United States*, 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987)). In short, the remedies requested dictate whether the case will be tried with or without a jury.

■ The problem in this case at this juncture is that plaintiff may secure different remedies under her federal and state law claims. On the federal claims plaintiff can only obtain equitable remedies, while on the state law claims, plaintiff can recover both legal damages and equitable relief. As a result, plaintiff is not entitled to a jury trial on the federal claims but is entitled to have a jury consider some of her state law claims, i.e., liability and damages. Since plaintiff is entitled under the Constitution to a jury trial on some of her claims, defendants' motion to strike plaintiff's claim for a jury trial is denied.

■ In the alternative, defendants urge this Court to either dismiss without prejudice or sever plaintiff's state law claims. Trying the two causes of action together before a jury, defendants argue, will deny them a fair trial because certain evidence, relevant only to the state law claim, should not be heard by the factfinder deciding the federal claim. Plaintiff opposes defendants' motions, arguing that severance or dismissal of the state law claims is unfairly burdensome to her.

Defendants argue that the state claims should be severed or dismissed because the introduction of evidence concerning compensatory and punitive damages under state law might inflame the jury and influence their determination of liability, especially on plaintiff's federal claim. For support, defendants cite *Mitroff v. Xomox Corp.*, 797 F.2d 271 (6th Cir.1986), an age discrimination case in which the plaintiff brought analogous state and federal causes of action against the employer in federal court. The trial court in that case held that it was unfair to the defendant for the jury to hear the state and federal claims together. The court opined that state law was unclear as to whether the plaintiff could recover monetary damages, and thus, it was unable to determine whether evidence concerning monetary damages was relevant. In light of the potentially inflammatory effect of the evidence, the court declined to hear the state law claims. Defendants use *Mitroff* to argue that "the addition of monetary damages testimony for a pendent state law claim in the trial of a federal law claim, without monetary damages is an appropriate basis for refusing to exercise pendent jurisdiction over the state claim." Defendants' Motion to Dismiss, at 9.

Defendants' argument has some merit. Evidence relevant to the determination of compensatory and punitive damages on plaintiff's state law claim is irrelevant to the determination of liability on either the state or federal claims, and it may influence the jury's determination of liability. Yet, plaintiff's argument has some persuasive force also. It would be a significant burden on plaintiff to try two cases—one federal and one state, one with a jury and one without.

The best solution to this dilemma is to keep the whole case in this Court and bifurcate the issues of liability and damages for trial purposes. To do so, this Court will bifurcate this trial *sua sponte*, pursuant to Fed.R.Civ.P. 42(b). The trial will proceed in two stages: a liability portion and, if necessary, a remedy portion. The liability portion will be tried before a jury, since the issue of liability under both FEPA and Title VII is identical. If the jury decides for plaintiff, i.e., that HCHP–NE, through its agents, discriminated against her, then the case will proceed to the second stage. If the jury decides for defendants, then judgment will enter for defendants.

A bifurcation of the trial addresses the concerns regarding prejudice, as expressed by the *Mitroff* court. The prejudicial evidence about which defendants express concern—evidence relating to compensatory and/or punitive damages—will not be reached until the second part of the trial, and only if defendants' liability has been determined. Since this evidence will not be admissible until after defendants' liability has been determined, the jury's determination of liability obviously cannot be influenced by it. The bifurcation eliminates prospective prejudice.

A bifurcation of this trial is also in the best interest of judicial economy. If the jury

finds for defendants on the issue of liability, then, of course, no other hearing will be necessary and much time and effort will have been saved. If defendants are found liable, a determination of damages can be made in the second stage. At that time, evidence concerning punitive and compensatory damages will be introduced, and clearly, such evidence cannot prejudice the findings of the jury. All of that evidence is relevant to the jury's deliberations on damages. The jury will determine damages under state law and the Court will decide what equitable remedies are available under federal and state law.

Since this Court has bifurcated the trial *sua sponte,* defendants' motion to sever or dismiss plaintiff's state law claims is denied.

### III. Conclusion

For the foregoing reasons, defendants' motion to dismiss plaintiff's claim for compensatory and punitive damages under federal law is granted. Defendants' motion for partial summary judgment as to plaintiff's claim for compensatory damages under state law is denied. In addition, defendants' motions to strike plaintiff's claim for a jury trial, or, in the alternative, to sever or dismiss without prejudice plaintiff's state law claims are denied. Finally, this Court bifurcates this case for trial, pursuant to Fed.R.Civ.P. 42(b). The question of liability on both federal and state claims will be determined by a jury. If the jury finds for plaintiff on the issue of liability, there will be a separate trial to determine remedies. A jury will determine damages under FEPA, and the Court will determine the available equitable remedies under both Title VII/1991 Civil Rights Act and FEPA. If the jury finds for defendants on the liability question, then the case will be concluded by the entry of judgment for defendants.

It is so ordered.